**Samuel J. TEDESCO**

v.

**Thomas J. O'SULLIVAN.**

**Civ. No. H–76–324.**

United States District Court,
D. Connecticut.

Sept. 1, 1976.

Bernard Peck, Bridgeport, Conn., for plaintiff.

Barney Lapp, Daniel Schaefer, Asst. Attys. Gen., Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

This unusual case concerning a threatened disbarment poses issues of extreme sensitivity as to the proper role of a federal court in adjudicating constitutional issues that may arise in the course of state court proceedings. Plaintiff is a judge of the Connecticut Superior Court. On June 28, 1976, he was found guilty by a jury in a Superior Court trial of falsely certifying to the administration of an oath in violation of Conn.Gen.Stat. § 53–368. He intends to appeal the conviction. Defendant is a judge of the Connecticut Superior Court who presided at plaintiff's trial and is scheduled to impose sentence on September 7, 1976. The complaint, which for purposes of defendant's motion to dismiss must be assumed to be true, *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), alleges that defendant has formed and expressed the intention of ordering plaintiff summarily disbarred at the time of sentencing under the authority of § 20 of the Connecticut Practice Book. Plaintiff seeks an order requiring defendant to show cause why he should not be restrained from disbarring plaintiff; defendant moves for dismissal of the complaint.

The issues on the merits that plaintiff tenders for decision are plainly substantial. Whether a member of the bar can be disbarred without notice and hearing raises a fundamental issue of procedural due process. The Court of Appeals for the Second Circuit recently precluded federal trial courts from including state disbarment as part of a federal sentence, preferring the normal observance of state procedural requirements. *United States v. Pastore,* 537 F.2d 675 (2d Cir. 1976). Moreover, there is a serious question as to whether § 20 of the

Connecticut Practice Book authorizes summary disbarment upon conviction of a crime. That section authorizes summary disbarment for "such cause" as occurs "in the actual presence of the court." The complaint alleges that the defendant in this case intends to disbar plaintiff under § 20 on the theory that plaintiff's conviction occurred "in the actual presence of the court" and that the conviction is the "cause" contemplated by § 20. The threatened interpretation of § 20 would authorize a sentencing judge to disbar summarily any attorney convicted of any offense, including motor vehicle offenses. However, § 21, outlining the procedures to be followed for disbarments not governed by § 20, makes its provisions applicable to disbarment for "misconduct not occurring in the actual presence of the court." The wording of § 21 strongly suggests that its procedures for notice and hearing can be dispensed with under § 20 only if the "misconduct" occurs in the presence of the court. *Cf.* Fed.R.Crim.P. 42(a); *Harris v. United States,* 382 U.S. 162, 164, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), approving summary disposition of contempts committed in the presence of a court. Moreover, § 20 itself specifies that when it is used as authority for a summary disbarment order, "a record shall be made of such order, reciting the ground thereof." Since the jury's verdict of guilty is made a matter of record upon its return, this requirement that the "ground thereof" be recited in the record also seems to indicate that the summary procedure is available for misconduct occurring in the presence of a court, rather than for a conviction evidencing misconduct elsewhere.

■■ Despite the substantiality of these issues on the merits, threshold procedural issues, also of substantial gravity, preclude this Court from resolving the merits of this case. Plainly *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, bar this Court from intervening in the pending criminal case against plaintiff, in the absence of limited special circumstances. Moreover, the principles of *Younger* abstention are fully applicable to federal court intervention in state disbarment proceedings. *Anonymous v. Ass'n of the Bar of City of New York,* 515 F.2d 427 (2d Cir. 1975); *Erdmann v. Stevens,* 458 F.2d 1205 (2d Cir. 1972).

■ Plaintiff seeks to avoid the impact of the *Anonymous* decision in several ways. First, he points out that *Younger* abstention is not required where state proceedings are only threatened, rather than actually pending. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). This distinction is unavailing in the circumstances of this case for two reasons. First, the distinction between pending and threatened state actions rests in large part on the intolerable dilemma faced by the typical federal court plaintiff who seeks relief against threatened state action. Claiming that a state statute or local ordinance unconstitutionally limits his right to engage in protected activity, he must either violate the statute or forego engaging in the protected activity, unless a federal court will adjudicate his attack on the statute or ordinance under which action is threatened. See *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). However, plaintiff in this case has already taken the action which is alleged to provide the basis for the threatened consequence of disbarment. Hence withholding federal court intervention poses no risk whatever that plaintiff will forego some protected activity for lack of federal court adjudication. See *id.* at 463, n.12, 94 S.Ct. 1209. That was precisely the situation in *Doran v. Salem Inn, Inc., supra.*

■ Second, even if threatened state proceedings could be attacked in some situations where the underlying conduct has already occurred, it would be singularly inappropriate to permit such attack in a case such as this, where adjudication would require federal court determination of the prospective ruling of a state court judge. All of the concerns expressed by the Second Circuit in *Erdmann* and *Anonymous* counsel strongly against embarking on such a task, regardless of whatever factual distinctions

may exist between those cases and this one. Even if considerations of judicial immunity do not preclude inquiry of a judge as to how he plans to rule in a matter to come before him, proper regard for the functioning of state and federal courts mandates that a federal court not endeavor to litigate what a state judge's ruling will be. Though plaintiff alleges he can prove defendant's intention by testimony from persons other than the judge, litigating the issue would thrust upon the defendant the totally unseemly choice of having the issue found against him without his testimony or submitting to cross-examination as to a ruling yet to be made.

■ Plaintiff's second reason for avoiding *Younger* abstention is that defendant's expressed intention to order summary disbarment evidences the type of bias that renders the state tribunal inadequate for fair litigation of the federal constitution claims. See *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). It is by no means clear that a judge's intention as to a ruling, arising from matters that have occurred in proceedings before him, indicates a bias that provides an exception to *Younger* abstention. In any event, determination of whether such bias exists would embark this Court upon an inquiry as to a state judge's future ruling, which, as already expressed, is precluded by considerations of comity. No facts are alleged to indicate any personal bias against plaintiff.

Finally, plaintiff asserts federal court intervention is appropriate because of the irreparable consequences of withholding relief. To the extent plaintiff relies on the personal embarrassment of a disbarment order, which, if erroneously entered, will not be corrected until subsequent appellate review, that concern is foreclosed by *Erdmann* and *Anonymous.* Both decisions contemplated the possibility that an unconstitutional disbarment order might be entered, with some appreciable time ensuing before reversal by the state appellate court or the United States Supreme Court.

■ Plaintiff makes a more particularized claim, however, alleging that disbarment, even if subsequently ruled erroneous on appeal, will irrevocably cause his removal as a state court judge. Relying on Conn. Gen.Stat. § 51–47, requiring a Superior Court Judge to be a member of the bar, he contends that disbarment will render him ineligible to serve as a judge, and that if his conviction or disbarment, or both, are reversed on appeal, there is no authority for his reinstatement as a judge. The risk that plaintiff apprehends, while not fanciful, is too speculative to justify the type of federal court intervention he seeks. For the irreparable harm to occur, all of these things must occur: the state trial judge orders disbarment and does so in a manner that violates the Constitution or state statutes; the state trial judge then vacates the stay of his order that would go into effect when the disbarment order is appealed, Connecticut Practice Book, § 661; he does so without affording plaintiff an opportunity to seek a further stay from the Connecticut Supreme Court; the Connecticut Supreme Court then denies plaintiff an opportunity to continue the stay pending appeal; state court or administrative action is taken to declare that plaintiff is removed rather than simply suspended as a judge pending appeal; a favorable decision is ultimately obtained on the merits; and the state courts declare themselves powerless to vacate the disbarment order as of the date it was entered in order to ensure plaintiff continuity of service as a judge. While that sequence of events is theoretically possible, there is no reasonable basis for believing that if the Connecticut courts ultimately determine that plaintiff has been erroneously disbarred, they will be unable to take appropriate corrective action, nor that if they lack sufficient corrective power, they will be unable to frame appropriate orders to avoid the occurrence of irreparable injury pending appeal.

■ Wholly apart from *Younger* abstention, this case presents an unsettled issue of state law that would in any event call for *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, abstention. *Blouin v. Dembitz,* 489 F.2d

488 (2d Cir. 1973). Section 20 of the Connecticut Practice Book appears never to have been construed by the Connecticut courts. A decision, either by the state trial or appellate court construing the section to be inapplicable to convictions, as distinguished from misconduct occurring in the presence of the court, will eliminate any federal constitutional issue concerning disbarment without notice and hearing. See *Steffel v. Thompson, supra,* 415 U.S. at 474–75, n. 21, 94 S.Ct. 1209.

This Court is not insensitive to the plight of the plaintiff, who, though convicted of a crime, is prepared to demonstrate to the state appellate court that his conviction should be reversed and is also prepared to demonstrate to this Court that he is about to be disbarred under procedures that violate the United States Constitution. Nevertheless, I conclude that under the circumstances alleged, a federal trial court should not adjudicate the constitutionality of a ruling yet to be made by a state trial court, and that if error, even of constitutional dimensions, should occur in connection with plaintiff's sentencing, the appropriate forums for relief are the Connecticut Supreme Court, and, if necessary, the United States Supreme Court.

The suit is dismissed.