GARDEN STATE BAR ASSOCIATION and the New Jersey Association of Black Women Lawyers, both corporations organized under the laws of the State of New Jersey; National Conference of Black Lawyers, a corporation organized under the laws of the District of Columbia; and Lennox Hinds, Appellants,

v.

MIDDLESEX COUNTY ETHICS COMMITTEE, an agency established by the Supreme Court of New Jersey.

No. 80–1224.

United States Court of Appeals, Third Circuit.

Argued Sept. 16, 1980.

Decided Feb. 24, 1981.

Opinion on Rehearing May 12, 1981. See 651 F.2d 154.

Morton Stavis (argued), Ctr. for Constitutional Rights, Newark, N. J., Bernard K. Freamon, Seton Hall University Law School, Newark, N. J., Lewis Myers, Jr., Natl. Conf. of Black Lawyers, New York City, Alfred A. Slocum, Newark, N. J., for appellants.

Mary Ann Burgess, Deputy Atty. Gen. (argued), John J. Degnan, Atty. Gen. of N. J., Trenton, N. J., for appellee; Erminie L. Conley, Asst. Atty. Gen., Trenton, N. J., of counsel.

Before ADAMS, WEIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

Lennox S. Hinds, a New Jersey attorney, was served by the Middlesex County Ethics Committee with a formal statement of charges arising out of comments made by Hinds in a press conference during the jury selection phase of a criminal trial. The charges initiated disciplinary proceedings. Hinds and three plaintiff organizations[1] filed suit in federal district court against the Ethics Committee seeking an injunction against those disciplinary proceedings and a declaratory judgment that the disciplinary rules under which Hinds had been charged are unconstitutional. The district court granted the defendant's motion to dismiss on the grounds that abstention under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), was required in deference to an ongoing state proceeding. We find abstention inappropriate because the proceeding before the Ethics Committee fails to guarantee to Hinds an adequate opportunity to make his constitutional arguments.

### II.

The events began with the publication of two newspaper articles in January 1977 which described a press conference held in connection with the criminal trial of Joanne Chesimard, then underway in state court. They reported that Hinds made statements highly critical of the trial judge's judicial temperament and racial sensitivity, of the jury selection process, and of the other con-

ditions under which the trial was being conducted. Among the statements attributed to Hinds were references to the state court proceeding as "a travesty", "legalized lynching", and "a kangaroo court." One article referred to Hinds as "one of Joanne Chesimard's lawyers." The other article identified Hinds as executive director of the National Conference of Black Lawyers. It stated accurately that Hinds had represented Joanne Chesimard "in a separate federal civil suit challenging the conditions of her isolation cell confinement in the Middlesex County Jail but is not a member of the five-lawyer defense team" in the criminal trial.

Although there were no complaints to the Ethics Committee about Hinds' alleged statements, these articles were submitted to the Ethics Committee by one of its members, David M. Foley, acting on his own initiative. In February 1977 the Ethics Committee directed Foley to investigate the statements reported to have been made by Hinds. After Hinds released the contents of a letter to him from Foley about the pending Ethics Committee's investigation, the Ethics Committee voluntarily suspended the investigation until the conclusion of the Chesimard trial. Thereafter Foley resumed his investigation and reported to the Ethics Committee his conclusion that Hinds' statements violated DR 1–102(A)(5) and DR 7–107(D) of the Code of Professional Responsibility. Those rules state in pertinent part:

DR 1–102 *Misconduct*

(A) A lawyer shall not:

\* \* \* \* \* \*

(5) Engage in conduct that is prejudicial to the administration of justice.

DR 7–107 *Trial Publicity*

\* \* \* \* \* \*

(D) During the selection of a jury or the trial of a criminal matter, a lawyer or law firm associated with the prosecution or defense of a criminal matter shall not make or participate in making an extra-

1. Plaintiff organizations are the National Conference of Black Lawyers, The Garden State Bar Association, and the New Jersey Associa-

tion of Black Women Lawyers. The latter two organizations function primarily within the State of New Jersey.

judicial statement that he expects to be disseminated by means of public communication and that relates to the trial, parties, or issues in the trial or other matters that are reasonably likely to interfere with a fair trial. . . .

Foley recommended that a statement of charges be prepared and served upon Hinds. The Ethics Committee accepted the recommendation and voted to prepare a formal statement of charges against Hinds, which was served on Hinds on January 3, 1978.

Instead of filing an answer to the charges pursuant to the New Jersey procedure for bar disciplinary proceedings, Hinds and the plaintiff organizations filed this action. The district court granted defendant's motion to dismiss the complaint based on *Younger* abstention, holding that "the principles of comity and federalism dictate that the federal court abstain so that the State is afforded the opportunity to interpret its rules in the face of a constitutional challenge."[2]

At plaintiffs' request, the district court reopened the case to take evidence that would permit plaintiffs to establish the existence of the degree of bad faith and harassment necessary to bring the case within *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), an exception to the general rule of abstention under *Younger*. After plaintiffs conducted extensive discovery, the court held hearings but concluded, after two days, that plaintiffs had failed to meet their burden of proof to establish that the case fell within the *Dombrowski* exception. The district court stayed the disciplinary proceedings pending this appeal.

### III.

■ The *Younger* doctrine of abstention, developed in the last decade, operates to limit the power of the federal courts to enjoin pending state proceedings when a federal plaintiff's claim of unconstitutionality can be raised and timely decided in the state proceedings. *Younger* abstention is not applicable when, *inter alia*, the state proceedings do not realistically afford plaintiff that opportunity, *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); when the state proceedings have been brought in bad faith or to harass plaintiff, *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); or when the state statute in question is totally infected by blatant unconstitutionality, *Younger v. Harris*, 401 U.S. at 53–54, 91 S.Ct. at 754–755. When the abstention doctrine is inapplicable, the federal courts retain their "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). In order to determine whether abstention by the district court was mandated under the *Younger* doctrine, we must examine in some detail New Jersey's scheme for disciplinary proceedings.

The Supreme Court of New Jersey is charged by the state constitution, Article 6, section II, paragraph 3, with responsibility for discipline of members of the state bar and has promulgated Rule 1:20, the court rule governing the investigation, hearing and review of complaints against attorneys. Pursuant to that rule, a complaint must

---

**2.** The court's language appears to implicate the *Pullman* abstention doctrine, not mentioned in the opinion at all. That doctrine requires abstention by federal courts where there are ambiguous or unsettled questions of state law if construction by the state could avoid the need to reach a federal constitutional question. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Pullman* abstention is not appropriate in this case. The disciplinary rules are not susceptible to a construction that would obviate consideration of the constitutional objections to their facial overbreadth. *See Kennecott Corp. v. Smith*, 637 F.2d 181 at 184–185 (3d Cir. 1980); *D'Iorio v. County of Delaware*, 592 F.2d 681, 689–91 (3d Cir. 1978). Both the Fourth and the Seventh Circuits have invalidated disciplinary rules similar to those at issue here without discussion of abstention on *Pullman* grounds. *See Hirschkop v. Snead*, 594 F.2d 356 (4th Cir. 1979) (en banc) (per curiam); *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242 (7th Cir. 1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976).

move through three tiers in the disciplinary process.[3]

1. *District Ethics Committee* (R. 1:20–2).

The District Ethics Committees are authorized to receive information relating to allegedly unethical conduct by a member of the bar. R. 1:20–2(e). The members of the District Ethics Committees, appointed by the Supreme Court, include attorneys and, since 1979, non-attorney members. R. 1:20–2(b). When information is received, the member designated by the Supreme Court as chairman assigns a member who is an attorney to review and inquire into the facts to decide whether a formal complaint should be filed. Based on that member's report, the chairman decides whether to close the inquiry or to proceed to the filing of a complaint. R. 1:20–2(h).

The complaint must contain a statement, signed and sworn to by the complainant, stating the facts constituting the allegedly improper conduct, the disciplinary rules asserted to have been violated, and whether, so far as is known, the same or similar complaints have been considered by any ethics committee. R. 1:20–2(i).

The attorney whose conduct is in question has ten days to answer, and may include in the answer "circumstances of a mitigating nature bearing on the charge." R. 1:20–2(j). Thereafter the chairman, based on a report prepared by the preliminary investigating member of the District Ethics Committee, must decide whether there is a pri-ma facie indication of unethical or unprofessional conduct which will require a hearing. If not, the complaint is formally dismissed. R. 1:20–2(k).

If a hearing is required, it is conducted before a panel of three or more members of the District Ethics Committee, a majority of whom must be attorneys. R. 1:20–2(m). The attorney under investigation is entitled to be present with a legal representative of choice or, if indigent, assigned by a state court for good cause shown. Discovery is allowed, and subpoenas are available by application to the District Ethics Committee. R. 1:20–2(*l*). All witnesses must be sworn and the hearing itself is recorded. R. 1:20–2(*l*), (m). The panel must then prepare a written report containing "its findings of fact and conclusions on each issue presented." Any member not concurring with the report may prepare a separate report. R. 1:20–2(n).[4]

The District Ethics Committee is bound by the conclusions of the hearing panel and must follow its recommendation to dismiss the complaint, prepare a letter of private reprimand, or, if a reprimand is found to be insufficient discipline, prepare a Presentment for consideration by the Disciplinary Review Board. R. 1:20–2(*o*).

2. *Disciplinary Review Board* (R. 1:20–3).

The Disciplinary Review Board is a statewide body appointed by the Supreme Court with attorneys constituting at least five but no more than six of its nine members.[5] The

3. Prior to April 1, 1978 the first level was the County Ethics Committee with direct review by the Supreme Court of New Jersey. Amendments in 1978 reorganized these county committees into district committees, and imposed an intermediate level of review by the Disciplinary Review Board. Since all further proceedings in this case would be governed by Rule 1:20 as amended, see note in R. 1:20–1, we discuss only that version of the rule. The jurisdiction of the new District VIII Ethics Committee is the same as that of the prior Middlesex County Ethics Committee.

4. Rule 1:20–5(d) requires that all proceedings and records made in the disciplinary proceedings be confidential and that no disclosure be made without the respondent attorney's con-sent. Prior to review in the Supreme Court, disclosure can be made ordinarily only by order of the Supreme Court. The Supreme Court may make whatever disclosure it chooses in connection with its own orders.

5. Five members constitute a quorum and any action other than a recommendation that discipline be imposed can be taken by a majority of the quorum. A recommendation that discipline be imposed or a recommendation for a temporary suspension must have the approval of five members of the Board. Since four members can be non-attorneys, it appears conceivable that a quorum of five could be constituted by four non-attorneys and only one attorney. R. 1:20–3(a), (b).

Board's review is de novo on the record, which includes the file, transcript and briefs, if any, filed before the District Ethics Committee. R. 1:20–3(d)(3), (e); 1:20–2(o)(3). Where the Board's review is of a determination that there was no unethical or unprofessional conduct, it can affirm or modify the action taken by the District Ethics Committee or remand to the Committee for further proceedings. R. 1:20–3(d)(3). If a letter of private reprimand has been recommended by the Committee, the letter can be sent upon the Board's approval. R. 1:20–2(o)(2). If the Board is reviewing a Presentment, oral argument will be permitted at the request of any party or the Board. The Board is required to "render a formal decision on each matter, which shall include findings of fact and conclusions as to each issue presented, and shall make a specific recommendation as to the appropriate disciplinary action, if any, to be imposed by the Supreme Court." R. 1:20–3(e).

3. *Supreme Court* (R. 1:20–4).

All decisions of the Disciplinary Review Board beyond a private reprimand are reviewed by the Supreme Court of New Jersey. R. 1:20–4(a). The Board's decision is reviewed on the record and briefs before the District Ethics Committee and the Disciplinary Review Board. R. 1:20–4(d). If the Board has recommended disbarment or suspension from the practice of law for a period greater than one year, the Rule provides that the record shall be supplemented by the filing of briefs and by oral argument before the Supreme Court. In all other cases, leave to file briefs or present oral argument must be given by the Supreme Court on motion. R. 1:20–4(a).[6]

### IV.

The ability of the federal plaintiff to vindicate the constitutional claim in the pending state proceeding has continually been stressed as a central consideration in determining the applicability of *Younger* abstention. The federal plaintiff is entitled to "a concrete opportunity to vindicate his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974). The importance of this factor was the basis for the holding in *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), that the district court correctly refused to abstain from enjoining a proceeding before the state board of optometry, the body vested by state law with authority to issue, suspend, and revoke licenses for the practice of optometry. The Court there stated that the predicate for a *Younger* dismissal is that the state proceeding provides "the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved." *Id.* at 577, 93 S.Ct. at 1697. Because the state board was incompetent by reason of bias to adjudicate the issues pending before it, abstention was inappropriate. Using a similar analysis, this court held that the district court erred in abstaining when there was no state procedure whereby the federal plaintiffs could raise their claims that the intake procedure used by probation officers employed by the Philadelphia Juvenile Court, to which they had been subjected, was unconstitutional. *Conover v. Montemuro*, 477 F.2d 1072 (3d Cir. 1973) (en banc).

Although the doctrine of *Younger* abstention has been extended since 1973, the relevance of this factor has been repeatedly reiterated. In *Kugler v. Helfant*, 421 U.S. 117, 124, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15 (1975), the Court stated that the policy of equitable restraint expressed in *Younger* "is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." In *Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977), the Court reiterated that factor when it stated that plaintiffs "need be accorded only an opportunity to *fairly pursue* their constitutional

---

**6.** Rule 1:20–4(d) provides that "[a]ll recommendations of the Disciplinary Review Board other than those otherwise referred to in this rule shall be reviewed by the Supreme Court on the full record below, supplemented as it may order on its own or a party's motion." Presumably, this encompasses decisions to dismiss charges or send a private reprimand.

claims in the ongoing state proceedings...." (emphasis added). The dissent's suggestion that the Supreme Court may have reformulated this factor in *Moore v. Sims*, 442 U.S. 415, 425–26, 99 S.Ct. 2371, 2378–79, 60 L.Ed.2d 994 (1979), is based on a statement in that opinion taken out of context.[7] In fact, in *Moore v. Sims*, the majority on more than one occasion focused on the relevant inquiry in the exact same language which the Court has consistently used: whether plaintiffs " 'had an *opportunity* to present their federal claims in the state proceedings.' *Juidice v. Vail, supra* [430 U.S.], at 337 [97 S.Ct. at 1218] (emphasis in original); see *Gibson v. Berryhill*, 411 U.S. 564, 577 [93 S.Ct. 1689, 1697, 36 L.Ed.2d 488] (1973)." *Id.* at 425, 99 S.Ct. at 2378.

We are therefore obliged to focus both on the nature of the claim of unconstitutionality which Hinds asserts in the federal proceeding and whether such a claim could be vindicated in the state proceeding which he seeks to enjoin. Hinds' constitutional attack, in essence, is that (1) application of the disciplinary rules to his statements violates the First Amendment, and (2) insofar as these disciplinary rules proscribe "statements likely to interfere with a fair trial" or "conduct [applied to speech] that is prejudicial to the administration of justice," they are facially vague and overbroad. Language identical to that in DR 7–107 has been declared unconstitutional in *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242

(7th Cir. 1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976) and *Hirschkop v. Snead*, 594 F.2d 356 (4th Cir. 1979). Hinds points out that DR 7–107 was modeled on the Code of Professional Responsibility of the American Bar Association. In 1978, the Association's Standing Committee on Standards for Criminal Justice recommended that the language be substantially modified to assign "greater weight to the attorney's right under the first amendment to make public, extrajudicial statements about criminal investigations or litigation." The revised standard, if adopted, proscribes only statements which "would pose a clear and present danger to the fairness of the trial" and thus incorporates the "serious and imminent threat" standard which the Seventh Circuit held was constitutionally compelled.[8]

In looking to the manner in which Hinds' claim of unconstitutionality could be treated in the proceeding in question, it is immediately apparent that the powers and procedures of the District Ethics Committee stand in sharp contrast to those of the state judicial bodies to which the federal courts have abstained. If, following the preliminary inquiry by a member, the chairman decides that a complaint should be filed, and if, following examination of the complaint, answer, and the investigating member's report, the chairman determines there are adequate grounds to proceed, the matter then proceeds to a hearing before a

---

7. The dissent relies on the language in *Moore v. Sims*, 442 U.S. 415, 425–26, 99 S.Ct. 2371, 2378, 60 L.Ed.2d 994 (1979), where the Court stated, "abstention is appropriate unless state law *clearly bars* the interposition of the constitutional claims." (emphasis added). In *Moore v. Sims*, there were three state court proceedings pending before the parents' federal suit was filed. The Texas Department of Human Welfare filed a suit for emergency protection of the children under the Texas Family Code, the parents filed a petition for a writ of habeas corpus in state court, and the Texas Department filed a "suit affecting the parent-child relationship" under another provision of state law. In the federal suit, the parents sought to challenge the procedures employed by the state to collect and disseminate child-abuse information. The majority, after examining Texas law with respect to joinder and imposition of claims, found that

Texas law was "as accommodating as the federal forum" and did not bar the claim in question. The context of the statement heavily relied on by the dissent here shows clearly it was not directed to whether *any* constitutional claim could be raised in the ongoing state judicial proceeding, which was conceded. Instead the issue was whether this particular constitutional claim could be raised either as a defense or by way of counter claim. That issue is unrelated to the issue here; *i. e.*, whether *any* constitutional claim can be effectively raised before the District Ethics Committee.

8. ABA Comm. on Association Standards for Criminal Justice, ABA Standards Relating to the Administration of Criminal Justice, Fair Trial and Free Press 1, 2 (2d ed. 1978 Draft).

panel of the District Ethics Committee. R. 1:20–2(k). It is evident that this hearing is designed to elicit facts, not legal arguments. It is incongruous for the dissent to suggest that the Ethics Committee can consider constitutional issues. The composition of the hearing panel, which includes non-lawyers, clearly indicates it is not designed or intended to deal with constitutional rulings which often require substantial legal background and the ability to make subtle legal differentiations. The panel's sole power of action is to direct dismissal of the charges. Otherwise it is limited to a recommendation of either a private reprimand or a Presentment, both of which must be considered *de novo* by the Disciplinary Review Board. Action on a Presentment can be taken only by the Supreme Court. There is no provision in any of the rules for a legal or constitutional determination at the Ethics Committee stage. The reason is apparent. No court in this country has heretofore been willing to accept constitutional rulings by non-lawyers. The dissent fails to acknowledge that one of the major changes effected with the revised New Jersey disciplinary structure was inclusion of non-lawyers on both the District Ethics Committee and Disciplinary Review Board. The New Jersey Supreme Court, in discussing the function of the County Ethics Committee *before* the revisions, stressed the special competence of the committees as trained in the law, noting specifically "that *all* committee members, unlike jurors, are members of the bar...." *In re Logan*, 70 N.J. 222, 228, 358 A.2d 787, 791 (1976) (emphasis added).

At argument before this court, counsel for New Jersey suggested that an attorney respondent could raise a claim of unconstitutionality before the Ethics Committee, and if the Committee agreed with the claim, its finding to that effect would be subsumed in a finding that there was insufficient showing to proceed against the attorney charged. This procedure falls short of providing the requisite meaningful opportunity to have the constitutional claims adjudicated. The rules make no provision for the filing of an opinion by the District Ethics Committee. A dismissal at this stage would have no precedential force as to any other District Ethics Committee or the Disciplinary Review Board. The very privacy of the proceeding militates against a meaningful constitutional adjudication, since the determination will not provide any remedy against the chill which the rules and the filing of charges allegedly create in the minds of other members of the New Jersey bar. In fact, New Jersey concedes that the District Ethics Committee is prohibited from issuing advisory opinions, and that its function is limited to consideration of complaints involving the character and professional ability of attorneys. There is another committee and process by which advisory opinions relating to disciplinary rules may be obtained; that committee, the Advisory Committee on Professional Ethics, may not consider an inquiry involving a pending action. R. 1:19.

The state relies on our decision in *Gipson v. New Jersey, Supreme Court*, 558 F.2d 701 (3d Cir. 1977) (per curiam). In *Gipson*, a New Jersey attorney who was being investigated for improper handling of client funds was temporarily suspended by the New Jersey Supreme Court for failure to produce material subpoenaed by the County Ethics Committee. Following his suspension, Gipson commenced a federal court action in which he challenged the constitutionality of the state's rules of attorney discipline. We held that under those circumstances, federal non-interference was appropriate, stressing that "the question of Mr. Gipson's suspension *is still pending in the state court.*" *Id.* at 704 (emphasis added). Gipson's case was already the subject of a state court action at the time the federal proceeding had been initiated. He had already filed a motion to quash the subpoena, which was considered by the New Jersey Supreme Court, and had been afforded oral argument before the Supreme Court on the issue of the propriety of suspension. It is evident that the Supreme Court of New Jersey proceeding afforded Gipson ample opportunity for adjudication of his constitutional claim, and therefore

that case does not, as the state claims, control disposition of this appeal.

In most of the cases which have applied *Younger* abstention to suits concerning pending state attorney disciplinary proceedings, the state proceedings had already reached the stage where the state courts were involved in considering the merits or had already been involved in some preliminary stage of the proceedings.[9] For example, in *Erdmann v. Stevens*, 458 F.2d 1205 (2d Cir.), *cert. denied*, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972), the federal court abstained after the Justices of the Appellate Division of the New York state court system served on Erdmann charges based on his alleged unethical conduct. In New York, unlike New Jersey, the Grievance Committee of the Bar Association refers its recommendation of disciplinary action to the Appellate Division, which then holds a trial *de novo* before any disciplinary action may be taken. *Id.* at 1209. We are aware of no claim there, or in any of the other attorney disciplinary cases, that the attorney respondent would be unable to raise the constitutional claim at the proceeding sought to be enjoined. In fact, in *Erdmann*, the court expressly noted its assumption that the attorney's constitutional rights would be protected in the Appellate Division proceeding. *Id.* at 1211.

Closely intertwined with the inability to raise the constitutional claim in a meaningful manner before the New Jersey District Ethics Committee are two issues relating to *Younger* abstention which have not yet been fully developed in the Supreme Court cases. One is the applicability of *Younger* abstention to administrative proceedings; the other is the stage of the state proceedings at which abstention should be applied. It is of interest that all of the Supreme Court cases which have held that *Younger* abstention was warranted were cases in which the state proceedings sought to be enjoined were judicial proceedings, not administrative proceedings. The distinction was noted by the Court in *Gibson v. Berryhill*, 411 U.S.. 564, 574 n. 13, 93 S.Ct. 1689, 1695 n. 13, 36 L.Ed.2d 488 (1973), where it said:

> The doctrine of exhaustion of administrative remedies should, however, be kept distinct from other equitable doctrines such as those exemplified in *Younger v. Harris*, . . . and *Railroad Comm'n v. Pullman Co. . . .* which do require a federal court to defer in appropriate circumstances to state *judicial* proceedings. (emphasis in original).

The Court stated that "administrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings", *id.* at 576–77, 93 S.Ct. at 1696–97, but did not explicate the "proper circumstances."[10] In other contexts, it has been recognized that we cannot expect ad-

**9.** *See, e. g., Rosenthal v. Carr,* 614 F.2d 1219 (9th Cir.), *cert. denied,* 447 U.S. 927, 100 S.Ct. 3024, 65 L.Ed.2d 1121 (1980); *Gipson v. New Jersey, Supreme Court,* 558 F.2d 701 (3d Cir. 1977); *Anonymous J. v. Bar Ass'n of Erie Co.,* 515 F.2d 435 (2d Cir.), *cert. denied,* 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60 (1975); *Goodrich v. Supreme Court of South Dakota,* 511 F.2d 316, 317 n.2 (8th Cir. 1975); *Tedesco v. O'Sullivan,* 420 F.Supp. 194 (D.Conn.1976); *Doe v. State Bar of California,* 415 F.Supp. 308 (N.D.Cal.1976), *aff'd* 582 F.2d 25 (9th Cir. 1978); *Mildner v. Gulotta,* 405 F.Supp. 182 (E.D.N.Y.1975) (three judge court), *aff'd sub nom. Levin v. Gulotta,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976). *Contra, ACLU v. Bozardt,* 539 F.2d 340 (4th Cir.), *cert. denied,* 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976) (board's role advisory; final action must be that of the state court); *Anonymous v. Associaton of the Bar of City of New York,* 515 F.2d 427 (2d Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975) (state trial court must make recommendation to discipline in all cases). Many of the courts considering abstention in the context of disciplinary proceedings have not focused on the stage of the proceeding and have not discussed the attorney respondent's opportunity to press the constitutional claims at that stage.

**10.** In *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977), the district court held *Younger* abstention was applicable only to ongoing state *judicial,* not administrative, proceedings. The Supreme Court declined to decide this issue, holding instead that the state had consented to settle the constitutional issue in federal court. *Id.* at 477–80 & n.10, 97 S.Ct. at 1902–04 & n.10.

ministrative proceedings to include a determination of the constitutionality of the laws under which they operate. *See, e. g., Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). We need not attempt to delineate the "proper circumstances" in which deference may be due state administrative proceedings, because such deference would, in any event, only be accorded to administrative adjudicative proceedings. *Younger* abstention has generally been discussed in the context of deference to a state *adjudicative* proceeding. *See, e. g., Colorado River Water Conservation Dist. v. United States*, 424 U.S. at 813, 96 S.Ct. at 1244. The proceedings before the District Ethics Committee cannot be classified as adjudicative because they are limited to fact-finding, they are conducted by committees including members of no special legal competence, and they cannot result in the imposition of any discipline.

In a recent decision, *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), the Court analyzed state bar disciplinary proceedings for the purpose of determining when immunity is appropriate. The Court divided such proceedings, even though carried out entirely under the aegis of the state judiciary, into legislative, adjudicative, and prosecutorial phases. Applying the same analysis here, it is evident that the proceedings before the District Ethics Committee fall within the prosecutorial phase of New Jersey's disciplinary proceedings.

 We need not determine, in this case, whether the adjudicative stage begins with the deliberations of the Disciplinary Board, which must take action with respect to the recommendations made by the various District Ethics Committees, as appellants concede, or whether it begins only upon consideration by the Supreme Court of New Jersey, which retains the sole power to take action beyond a private reprimand. The Supreme Court of New Jersey has on several occasions stressed that the county ethics and grievance committees perform the functions of receiving complaints, investigating them, holding hearings on them, and

then presenting their findings to the court, but that it is the Supreme Court which makes its findings of fact and conclusions of law. *In re Logan*, 70 N.J. 222, 226–27, 358 A.2d 787 (1976); *In re Loring*, 73 N.J. 282, 289, 374 A.2d 466 (1977); *Toft v. Ketchum*, 18 N.J. 280, 284, 113 A.2d 671, *cert. denied*, 350 U.S. 887, 76 S.Ct. 141, 100 L.Ed. 782 (1955). In rejecting a claim that the Ethics Committee (before the rules were amended) acts as "investigator, prosecutor, judge and jury," that court stated the attorney had the opportunity to submit briefs and orally argue the cause before the Supreme Court, "the only body which has the authority to decide the issues, factual and legal, and fix the disciplinary terms." *In re Logan*, 70 N.J. at 228, 358 A.2d 787. It is, therefore, evident that the adjudicative stage had not been reached at the stage of the proceedings before the District Ethics Committee. In the most egregious disciplinary situation, the District Ethics Committee can do no more than recommend a Presentment (the accusatory instrument) which must be considered *de novo* by the Disciplinary Review Board. Although bar disciplinary proceedings are *sui generis*, if we were to analogize these proceedings to state criminal proceedings, the case against Hinds is still at the pre-indictment stage. As in the criminal proceedings, the prosecutor's office is not the appropriate stage at which the federal plaintiff's constitutional rights can be vindicated. Therefore, this stage of the proceedings, before the issuance of a Presentment, is similar to that of the threatened state court criminal prosecution for which the Supreme Court held abstention inappropriate in *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The rationale behind *Younger*, to avoid federal intervention which "can be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles," *id.* at 462, 94 S.Ct. at 1217, was deemed inapplicable when a state court proceeding had not yet begun.

The dissent appears to argue that even if our analogy of the District Ethics Committee proceeding to the prosecutorial stage of

a proceeding is apt, *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), commands abstention nonetheless. With all due respect to our dissenting brother, we believe that case offers no support to his position. In *Hicks v. Miranda*, the police seized four copies of a film from the plaintiffs' theatre and filed criminal charges against two of plaintiffs' employees. On the same day the state court ordered plaintiffs to show cause why the film in question should not be declared obscene. The following day, after a hearing, the court declared the film obscene and ordered all copies seized. Plaintiffs chose not to appeal but instead, two days later, filed their federal suit. The complaint in the federal suit was served on January 14, 1974. On January 15, the criminal complaint pending in state court was amended to name the federal plaintiffs as additional parties defendant and to add four conspiracy counts. The Supreme Court held that the three-judge court which issued its judgment on June 4, 1974 declaring the California obscenity statute to be unconstitutional should instead have abstained because no "proceedings of substance on the merits [had] taken place in the federal court" before the appellees themselves were charged in the state criminal proceeding. *Id.* at 349, 95 S.Ct. at 2291. There is simply nothing in the majority opinion in *Hicks v. Miranda* to suggest that abstention is proper during the period in which the prosecution is investigating the facts, the analogy to this stage of the disciplinary proceeding since no recommendation for action has yet been made.

As we have noted in previous cases, when the existing Supreme Court precedent does not clearly require the federal courts to abstain, we are reluctant to extend the abstention doctrine to deprive plaintiffs of their option of using the federal forum. *See New Jersey Education Ass'n v. Burke*, 579 F.2d 764, 771 (3d Cir.), *cert.*

denied, 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978); *Johnson v. Kelly*, 583 F.2d 1242, 1249–50 (3d Cir. 1978). If we were to use the balancing of state and federal interests applied in those cases, we must find that the state interest in disciplinary proceedings, although strong, has not reached the crucial stage at which a responsible state body has made a determination that there are sufficient grounds to require Hinds to proceed to adjudicative proceedings with regard to the charge that he has violated his ethical responsibility. On the other hand, the federal interest is strong. As Justice Stewart has stated: "The duty of the federal courts to adjudicate and vindicate federal constitutional rights is, of course, shared with state courts, but there can be no doubt that the federal courts are 'the primary and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the United States.' F. Frankfurter & J. Landis, The Business of the Supreme Court: A Study in the Federal Judicial System 65 (1927)." *Hicks v. Miranda,* 422 U.S. at 355, 95 S.Ct. at 2294 (Stewart, J., dissenting). News of the initiation of such proceedings may chill other attorneys from exercising their right to free expression, and Hinds will be subjected to proceedings at which he may never have the opportunity to have his constitutional claims adjudicated.[11]

The state appears to be arguing that a federal forum should not be available whenever a state forum can be used. We rejected that contention in *New Jersey Education Ass'n v. Burke*, 579 F.2d at 768–69, where we noted the continued viability of the holding in *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961) that "The federal remedy is supplementary to the state remedy and the latter need not be first sought and refused before the federal one is invoked." *See Colorado River Water Conservation Dist. v. United States,*

---

11. As noted previously in the text, if the charges are dismissed, Hinds will not be able to have any adjudication on his constitutional claims. If the charges are the subject of Presentment to the Supreme Court, the constitutional claims undoubtedly can be pressed at that time. However as the Supreme Court noted, abstention is not "required simply because judicial review, *de novo* or otherwise, would be forthcoming at the conclusion of the administrative proceedings." *Gibson v. Berryhill,* 411 U.S. at 577, 93 S.Ct. at 1697.

424 U.S. at 813–14, 96 S.Ct. at 1244. If we were to apply *Younger* abstention in this case, we would extend it far beyond any holding of the Supreme Court. We believe the district court erred in doing so.

■ Along with the dissent, we recognize that disciplinary proceedings directed against members of the bar are primarily the concern of the state courts. We in no way wish to be understood as repudiating our holding in *Gipson v. New Jersey Supreme Court*, 558 F.2d 701, 704 (3d Cir. 1977), that "in view of the special relationship between state courts and members of their bars, . . . the doctrine of federal noninterference is appropriate in suits concerning pending attorney disciplinary proceedings." We hold only that in the particular circumstances of this case, the predicate for *Younger* abstention—"the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved," *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973)—is lacking. Inasmuch as the state proceedings have not yet reached a stage at which Hinds' constitutional claims may be adjudicated, and because delay may chill the exercise of his first amendment rights, we find that abstention is inappropriate in this case.

In light of our holding that abstention was improper, we do not reach the issue of the applicability of the bad faith exception. Nor do we decide whether dismissal on abstention grounds was proper as to the plaintiff organizations who were not parties to the state disciplinary proceedings, an issue they have not raised on appeal. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 927–31, 95 S.Ct. 2561, 2565–67, 45 L.Ed.2d 648 (1975); *Conover v. Montemuro*, 477 F.2d at 1078–80; *Lewis v. Kugler*, 446 F.2d 1343, 1349 (3d Cir. 1971).

Accordingly, we will vacate the judgment of the district court and remand this case for further proceedings.

ADAMS, Circuit Judge, concurring.

I concur fully in the majority opinion, but write separately to emphasize what is already stated therein: that the disposition of the case at bar does not signal a retreat from our holding in *Gipson v. New Jersey Supreme Court*, 558 F.2d 701 (1977) (per curiam). State courts bear primary responsibility for the discipline of their bar and, in general, the federal judiciary is to exercise no supervisory role in state bar disciplinary proceedings.

Nor does today's decision, in my view, turn on the rather metaphysical question of whether the New Jersey disciplinary structure should be construed to involve three distinct, as opposed to one extended, proceeding. That question, while intriguing, is nonetheless subordinate to the critical inquiry, mandated by *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), namely, whether the state procedure in question offers "the opportunity to raise and have *timely* decided by a competent state tribunal the federal issues involved." *Id.* at 577, 93 S.Ct. at 1697 (emphasis added). The crucial facts here are that the New Jersey procedure, as described by the parties, will not provide Mr. Hinds with a timely adjudication of his First Amendment claims, and that, in the meantime, the spectre of professional discipline may deter him from exercising his constitutional right freely to express his opinions. If the New Jersey procedure were structured so as to provide Mr. Hinds a prompt and meaningful hearing on his constitutional arguments, or if his challenge did not implicate a right that is offended whenever its uninhibited enjoyment is deterred, the result today might well be different.

WEIS, Circuit Judge, dissenting.

I begin with the premise the majority concedes, that attorney disbarment proceedings are generally subject to *Younger v. Harris* abstention. We so held in *Gipson v. New Jersey Supreme Court*, 558 F.2d 701 (3d Cir. 1977), and in this position we are in accord with four other circuits.[1]

1. *Rosenthal v. Carr*, 614 F.2d 1219 (9th Cir.), *cert. denied*, 447 U.S. 927, 100 S.Ct. 3024, 65 L.Ed.2d 1121 (1980); *ACLU v. Bozardt*, 539 F.2d 340 (4th Cir.), *cert. denied*, 429 U.S. 1022,

In *Gipson* we stressed that the traditional power of state courts to discipline attorneys is in a field particularly suited to the principle of federal court noninterference. Because of the special relationship between state courts and the bar, incursions by federal tribunals into pending disciplinary proceedings are antagonistic to notions of comity. As Judge Mansfield wrote in *Erdmann v. Stevens*, 458 F.2d 1205, 1210 (2d Cir.), *cert. denied*, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972):

"It requires little vision to appreciate that if a state court were subject to the supervisory intervention of a federal overseer at the threshold of the court's initiation of a disciplinary proceeding against its own officer, the state judiciary might suffer an unfair and unnecessary blow to its integrity and effectiveness."

Consonant with these considerations, the district court found that unless an exception to *Younger* was demonstrated, abstention would apply. After an evidentiary hearing failed to substantiate allegations of bad faith and harassment, the court determined that deference to the state proceeding was proper. The majority, however, finds *Younger* inapposite, and reverses on the theory that the District Ethics Committee proceedings do not give appellant the opportunity to adjudicate his constitutional claims. I believe this determination is contrary to *Gipson*, and is born of an erroneous perception of the state's disciplinary procedures.

The Supreme Court of New Jersey appoints the members of the District Ethics Committees, R. 1:20–2(a), that function as

"arms of the court . . . perform[ing] the very important functions of receiving complaints, investigating them, holding hearings on them, and then presenting their findings to the court.

\* \* \* \* \* \*

"[T]he filing of a complaint with one of our ethics and grievance committees is in effect a filing with the Supreme Court."

*Toft v. Ketchum*, 18 N.J. 280, 284, 113 A.2d 671, 674, *cert. denied*, 350 U.S. 887–88, 76 S.Ct. 141, 100 L.Ed. 782 (1955). In a later opinion, *In re Logan*, 70 N.J. 222, 225, 358 A.2d 787, 789 (1976), the court wrote:

"These committees are agents of the Supreme Court. It is the Supreme Court which in the final analysis makes the factual findings, draws the legal conclusions, and determines the appropriate discipline."

These cases were decided before adoption of the current disciplinary rules in 1978. The major change introduced by the new rules was the interposition of a Disciplinary Review Board between the Supreme Court and the District Ethics Committee. The addition of an intermediate review step in the disciplinary process, however, does not vary the function or status of the District Ethics Committee to any significant degree. The most substantial alteration effected by the new rules has been to delegate part of the Supreme Court's initial review function by assigning its *de novo* consideration to the disciplinary board.

The District Ethics Committee's responsibility to act as the origin for disciplinary matters remains unchanged. The current rules alter the postcommittee procedures. Instead of presenting its findings directly to the Supreme Court, as was the previous practice, the Committee now directs its recommendations to the Disciplinary Review Board. R. 1:20–2(o).

New Jersey's description of its ethics committees as "arms of the court" is not derived from their adjudicative role. Rather, the characterization stems from their preparatory and hearing duties, such as receiving complaints, conducting investigations, presiding over hearings, and recommending findings—functions explicitly entrusted to them by the court. *Toft v. Ketchum, supra.* The Supreme Court retains full control over the proceedings at every

97 S.Ct. 639, 50 L.Ed.2d 623 (1976); *Anonymous J. v. Bar Ass'n of Erie County*, 515 F.2d 435 (2d Cir.), *cert. denied*, 423 U.S. 840, 96

S.Ct. 71, 46 L.Ed.2d 60 (1975); *Goodrich v. Supreme Court of S. Dakota*, 511 F.2d 316 (8th Cir. 1975).

level, since it is that body that has the constitutional power to discipline attorneys in New Jersey. N.J.Const. art. 6, § 2. The ethics committees, as well as the disciplinary board, facilitate enforcement of that duty. The responsibilities of the ethics committees in this respect have not varied with the adoption of the current rules and, as before, after the preliminary work is completed, disciplinary matters ultimately are resolved by the Supreme Court.[2]

The New Jersey Court has held that ethics committee proceedings are judicial ones. They are not separate and apart from those of the Supreme Court. At least beginning with the filing of a complaint, the proceedings are deemed to be part of the court's business and under its control. "From the very beginning a disciplinary proceeding is judicial in nature, initiated by filing a complaint with an ethics and grievance committee." *Toft v. Ketchum, supra* 18 N.J. at 284, 113 A.2d at 674. It is a single continuous proceeding, culminating in the Supreme Court.

In *Gipson v. Supreme Court of New Jersey*, 416 F.Supp. 1129 (D.N.J.1976) (three-judge court), *aff'd*, 558 F.2d 701 (3d Cir. 1977), the court recognized that the ethics committees were agents of the state supreme court and not separate and independent bodies. In *Gipson*, the plaintiff had been suspended from the practice of law pending his compliance with a subpoena from the Ethics Committee. Although the New Jersey Supreme Court had made some interim rulings in the case, including the suspension order, at the time the federal injunction was sought, the matter was pending before the Ethics Committee. Nevertheless, we affirmed the three-judge court's finding that *Younger* required abstention.

Similarly, in *Anonymous v. Association of the Bar of New York*, 515 F.2d 427 (2d Cir.),

*cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975), *Younger* was invoked when a hearing was in progress before a panel of a bar association grievance committee. Noting that the New York state courts had termed the activities of its ethics committees as "judicial proceedings," the Second Circuit analogized the committee's functions to that of a special master in the federal court. *Id.* at 433. In *Rosenthal v. Carr*, 614 F.2d 1219 (9th Cir.), *cert. denied*, 447 U.S. 927, 100 S.Ct. 3024, 65 L.Ed.2d 1121 (1980), an attorney sought to prevent the commencement of a hearing before a state bar committee but was rebuffed by the federal courts on *Younger* grounds.

The plaintiff in *ACLU v. Bozardt*, 539 F.2d 340 (4th Cir.), *cert. denied*, 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976), attempted to enjoin the processing of a complaint by a state grievance and disciplinary board. The court found that the Board's function was advisory only, with the final determination of any disciplinary action being the province of the state supreme court. Despite this lack of final adjudicatory power, which is the same deficiency alleged here, that case, too, held that *Younger* was applicable.

As these cases demonstrate, disciplinary proceedings, for *Younger* purposes, are not a series of discrete, unrelated segments by independent bodies.[3] Therefore, an assumption that under current rules the Ethics Committee does not have the power to adjudicate a constitutional question misses the mark. Unquestionably, the New Jersey Supreme Court is empowered to adjudicate the plaintiff's constitutional questions, and, from its ruling, an appeal to the United States Supreme Court would be available. *In re Logan, supra*, for example, presented a broad based attack against the disciplinary proceedings on due process grounds that the New Jersey court rejected.

---

**2.** The only exception is a private reprimand, R. 1:20–4(a).

**3.** *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), provides no support for the plaintiff in avoiding *Younger* because in that case the entity enjoined was an administrative agency, a part of the executive department of the state, not a judicial body, such as that challenged here. *See Huffman v. Pursue*, 420 U.S. 592, 594, 95 S.Ct. 1200, 1203, 43 L.Ed.2d 482 (1975); *cf. Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977).

It is also apparent that since *Younger v. Harris* was first announced, the Supreme Court has been firm in requiring that its holding be followed. Indeed, the reach of that decision has been expanded both as to the time it becomes applicable and to the scope of the subject matter included. For example, in *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1975), state criminal proceedings had not yet been instituted against the plaintiffs who sought a federal court injunction. The Court nevertheless held that when the state complaint is filed after the action in the district court has begun, but before any federal proceedings of substance have occurred, *Younger* applies in full force.

Here, by contrast, the Ethics Committee had already investigated the matter and served its complaint upon the plaintiff before he turned to the district court. After *Hicks v. Miranda*, plaintiff's contention that the prosecutorial stage of a proceeding does not trigger *Younger* considerations is dubious and of little support as an analogy to the case at hand. Nor can this case be likened to *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), since the filing of the complaint here converts the "threat" of prosecution into a concrete, pending action.

Having concluded that the proceeding before the Ethics Committee is judicial in nature, the remaining question is whether the parties are afforded an opportunity to have their federal claims adjudicated. *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). In a recent abstention case, *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Court announced the test for determining if constitutional attacks can be adjudicated in the state court. Rejecting a district court finding that some of the challenged state actions did not involve judicial proceedings, and consequently there was no pending civil litigation, the Supreme Court said, "Certainly, abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." *Id.* at 425–26, 99 S.Ct. at 2378.

The unquestioned opportunity to present constitutional issues to the New Jersey Supreme Court is in marked contrast to the somewhat ambiguous situation in *Moore v. Sims*. It cannot be said here that New Jersey law and procedure "clearly bar the interposition of the constitutional claims." Thus, even if the majority's approach in fragmenting the disciplinary proceedings is correct, there has been no showing that the *Moore v. Sims* threshold has been crossed.[4]

Nor am I persuaded that the Ethics Committee may not consider constitutional issues. There is no prohibition in the rules prohibiting assertion of such matters before that Committee. The attorney under investigation may set forth mitigating circumstances in his answer to the complaint, including, I am confident, asserted unconstitutionality of the disciplinary rule alleged to have been violated. Because the New Jersey procedures provide for representation by counsel and the majority of the ethics panel must be lawyers, it is a reasonable assumption that the Committee is to entertain not only factual, but legal issues as well.[5] The fact that the Committee does not issue published opinions is irrelevant, since that same practice is followed in most trial courts. In any event, the powers of the Ethics Committee in this respect under the current rules are the same as those which were in effect under previous practice where we held that *Younger* applied. *Gipson, supra.*

---

4. *See* Comment, Defining Younger's Adequate State Forum Requirement, 68 Geo.L.Rev. 989 (1980); 18 Duq.L.Rev. 705 (1980).

5. The fact that the tribunal includes nonlawyers does not preclude recognition as a judicial body. Until adoption of amendments to its constitution in 1968, Pennsylvania permitted lay persons to function as "associate judges" in the Court of Common Pleas in certain counties. The two associate judges who sat with a legally trained judge could overrule him only on questions of fact. Murray's Petition, 262 Pa. 188 (1918). Vermont and other states have had similar lay judges. *See* Note, Do All Judges Have to be Lawyers? Side Judges in Vermont: The Case of *State v. Dunkerly*, 3 Vt.L.Rev. 147 (1978).

I conclude that the district court properly applied *Younger v. Harris* in dismissing the complaint. I would therefore affirm its judgment.