**HERZ, Sylvia,**

v.

**John J. DEGNAN, Morris Goodman, Adella C. Youtz, and Stanley Moldawsky, and the New Jersey State Board of Psychological Examiners.**

**Appeal of John J. DEGNAN, Attorney General of New Jersey, and the State Board of Psychological Examiners.**

**No. 80–2032.**

United States Court of Appeals, Third Circuit.

Argued March 16, 1981.

Decided May 7, 1981.

Michael R. Cole, Acting Atty. Gen. of N. J., Stephen Skillman, Asst. Atty. Gen., George W. Fisher, Deputy Atty. Gen. (argued), Trenton, N. J., for appellants John J. Degnan and State Board of Psychological Examiners.

Morton Stavis (argued), Newark, N. J., John Paul Dizzia, Union, N. J., for appellee.

Before SEITZ, Chief Judge, and VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

The Attorney General of New Jersey and the State Board of Psychological Examiners (the board) appeal from an order granting a partial summary judgment enjoining them from seeking the revocation or in any other way interfering with the license of plaintiff Sylvia Herz to practice psychology in New Jersey except for reasons and in accordance with procedures set forth in the statutes of New Jersey for the suspension or revocation of such licenses. The partial summary judgment was granted on the basis of an extensive record of affidavits, exhibits and depositions. The appellants do not, however, contend that there is any material issue of disputed fact. Rather, they contend that the court erred as a matter of law in enjoining them from revoking Dr. Herz's license for reasons other than those set forth in the New Jersey statutes. We affirm.

### I

In 1966 New Jersey adopted a statute requiring the licensing of persons rendering professional psychological services. N.J. S.A. 45:14B–1–30; L.1966, ch. 282, §§ 1–30 (1966 Act). The statute created in the Department of Law and Public Safety a State Board of Psychological Examiners, consisting of 7 members appointed by the Governor. The board must "be composed of members who represent equitably the diverse fields of psychology, a majority of whom should be licensed practicing psychologists." N.J.S.A. 45:14B–9. Each member must be a resident of New Jersey and shall have these additional qualifications:

(b) He shall either be a member of or have professional standing equivalent to that required for classification as a member of the New Jersey Psychological Association and the American Psychological Association.

(c) He shall be at the time of his appointment, and shall have been for at least 5 years prior thereto, actively engaged as a psychologist in one or more phases or branches of psychology or in the education and training of doctoral or postdoctoral students of psychology or in psychological research, and shall have spent the major portion of the time devoted by him to such activity, during the 2 years preceding his appointment, in this State.

(d) He shall hold the doctoral degree in psychology or in a closely allied field from a recognized educational institution.

N.J.S.A. 45:14B–10. The first 7 appointees were, under the statute, "deemed to be . . . licensed practicing psychologists immediately upon their appointment. . . ." N.J.S.A. 45:14B–11. Members of the New Jersey Psychological Association (the Association), a private professional organization, were appointed initially. The board is empowered to "examine and pass on the qualifications of all applicants for permits or licenses under the act, and shall issue a permit or license to each qualified successful applicant therefor, attesting to his professional qualifications to engage in the practice of psychology." N.J.S.A. 45:14B–13. Qualifications may be determined either by examination of credentials from another state or a nationally recognized psychological board or agency, N.J.S.A. 45:14B–20, or by a written examination, N.J.S.A. 45:14B–18. In addition, the 1966 Act contained a grandfather provision, since repealed,[1] providing that an applicant who applied before January 1, 1968 could be licensed by an examination of credentials showing that he

[h]as received the degree of Doctor of Philosophy in psychology from a recognized educational institution, or in lieu of such degree, a doctoral degree in a closely allied field if it is the opinion of the board that the training required therefor is substantially similar, or has otherwise had training in psychology deemed equivalent by the board, and has had at least the equivalent of 5 years of full-time professional experience in psychology, of which the equivalent of at least 2 years of full-time experience must have been accumulated in the practice of psychology, and of which the equivalent of 3 years of full-time experience may have been accumulated in the teaching of psychology at a recognized educational institution or in psychological research; or in the administration of a program of psychological services; . . . .

N.J.S.A. 45:14B–15(a).

In 1964 Dr. Herz earned a Ph.D. degree from New York University in Human Development and Social Relations. By 1967 she had been active for many years in the field of mental health. She filed a timely application for licensure pursuant to the grandfather provision. The board denied her application on the ground that she did not possess sufficient psychology credits. Thereafter, on several occasions in 1969, 1973 and 1974, Dr. Herz attempted to have the board reconsider its denial of her application or explain more fully its reasons. With these applications she advised the board that she did have extensive graduate and undergraduate credits in psychology, and offered to supply transcripts. On each occasion she was denied a license.

Members of the board served for staggered terms. In 1974 the Governor ceased considering recommendations for membership proffered by the New Jersey Psychological Association. In that year he appointed Dr. Herz a member of the Board. There is no suggestion that she failed to meet the qualifications for membership specified in N.J.S.A. 45:14B–10 quoted above. By 1977 the influence of the New Jersey Psychological Association in the board had been considerably diminished. In that year Dr. Herz inquired of the Office of the Attorney General whether the board had the power to reconsider its denial of her 1967 application. That office had responsibility for furnishing legal advice to professional boards. N.J.S.A. 52:17A–4(e). The Deputy Attorney General in charge of professional boards concluded that so long as Dr. Herz did not participate in the board's deliberations on her application it could be reconsidered. That advice was given to the board after consideration within the Attorney General's office.

On June 27, 1977 reconsideration of Dr. Herz's application was taken up. The board minutes disclose:

At the request of Deputy Attorney General Joseph Ferraro, Jr., the application of Dr. Sylvia Herz for licensure, supported by supplemental material, was brought to the Board's attention. The extent of the documents submitted was such that a motion by Dr. Feldman,

---

**1.** L.1979, ch. 432, § 5, effective February 14, 1980.

seconded by Dr. Breslin, to delay action on this matter until sufficient time for review of the new material had been given the Board members was passed by majority vote.

App. at 176.[2] Further deliberation took place at a meeting on September 12, 1977, at which a Deputy Attorney General was present, the minutes of which disclose:

SPECIAL REFERRAL—THE MATTER OF DR. SYLVIA HERZ:

Dr. Taylor moved, seconded by Dr. Breslin, that the minutes reflect that she questioned whether the procedures for the reopening of Dr. Herz's application were usual and customary and open to all applicants. After discussion it was concluded that this is so. The motion passed unanimously.

Dr. Silverman made a motion that the application of Dr. Herz be considered under the "Grandfather Clause," retroactive to Board policy and consistent with the law at the time of original application. Seconded by Dr. Breslin. Motion carried.

Dr. Roth made motion that in review of letter from Dr. Giles, Dr. Herz's dissertation, abstract, and transcripts that it would appear that she would have met the requirements specified for an allied degree under Section 45:14B-15a. Seconded by Dr. Silverman and passed unanimously.

Dr. Roth moved that we accept Dr. Herz for licensure upon review of documents under "Grandfather Clause" if one additional year of experience beyond what was set forth previously is submitted. Motion passed unanimously.

Dr. Herz has been informed of the requirements and is more than willing to provide the Board with a letter from Dr. Langer documenting her employment.

App. at 178–79. Thus by September 12, 1977 the board had concluded that the ostensible reason for denying the application—lack of academic credits in psychology—was not supported, but insisted on further evidence on the other grandfather clause requirement of professional employment. On September 26, 1977 such documentation was received and the minutes reflect that Dr. Herz was licensed by credentials under the provisions of N.J.S.A. 45:14B–15(a), she not participating in the discussions, deliberations or vote. App. at 181. A license was issued in due course. It is undisputed on this record that Dr. Herz was in fact fully qualified in 1967 for licensure pursuant to the grandfather statute.

The minutes of the September 26, 1977 meeting also disclose consideration of a letter from the New Jersey Psychological Association regarding "conflict of interest," which apparently complained of the board's reconsideration of Dr. Herz's application while she was a member. The minutes indicate that the board relied on advice from the Attorney General's office that they were acting legally and ethically. App. at 181. The Deputy Attorney General cited as precedent for reconsideration action by the New Jersey Board of Certified Public Accountants. App. at 294–95. The Association was not satisfied, however, for on October 12, 1977 its president, Adella C. Youtz, prepared a "Bill of Particulars" expressing its concerns with the board. The "Bill of Particulars" complained:

By going outside the legal limits of reconsideration and licensure for one person, thus repudiating the action of a prior Board, the present Board has opened the door to a demand for reconsideration by every person who has unsuccessfully applied for licensure. This makes a mockery of past Board decisions and the relevant law regarding licensure of psychologists.

*Recommendation*: Although various responses have been suggested by psychologists it is probably necessary to accept the action. The Attorney General and the Board *should on another occasion make use of the Governor's Commission on Ethical Practices in Government* before exerting pressure on the Board for a decision which would jeopardize the good reputation of the Board.

---

**2.** References to the appendix are to appellants' appendix unless otherwise noted.

The Governor is required to consult professional associations in the appointment of members to the regulatory boards. In the case of the New Jersey Board of Psychological Examiners the Governor has not within recent years, appointed to the Board a person who appeared on the lists of recommendations from NJPA. However, in several instances, an appointment has been made of a past president of the New Jersey Psychological Association who had the trust and confidence of psychologists. Recently it has become public knowledge that if a member of the Board develops an opinion on accreditation for psychologists contrary to the view held by the Attorney General or his representatives, then it is unlikely that that member will be reappointed by the Governor.

*Recommendation*: It is recommended that a commission examine political influence on regulatory boards regarding professional accreditation.

App. at 140–41. The tenor of the "Bill of Particulars" is plain. The Association was dissatisfied with the Governor's recent appointments, and dissatisfied that their action in Dr. Herz's case reflected upon the action of former board members who were also Association members. It did not complain that Dr. Herz in fact lacked the qualifications set out in N.J.S.A. 45:14B–15(a), but rather that consideration of the matter violated ethical standards. Although the "Recommendations" in the "Bill of Particulars" about Dr. Herz's license state "it is probably necessary to accept the action," on November 11, 1977 the Association president filed with the New Jersey Executive Committee on Ethical Standards in Government (the Commission) a complaint against Deputy Attorney General Joseph W. Ferraro, Jr., in charge of professional boards, and against the board, charging that licensing of a sitting member of the board involved a conflict of interest. App. at 143. That commission reported that Dr. Herz had acted in violation of section 5(a) of the Conflicts of Interest Act, N.J.S.A. 52:13D–16(a), by submitting an application to the board of which she is a member. *See* App. at 232.

By letter dated March 30, 1978 Attorney General Degnan advised the Commission that its ruling was incorrect, App. at 234, a position consistently maintained by the Attorney General's office since the Association's conflict of interest charge was first raised, and still maintained in this action. *See* Appellant's brief at 10 n.*.

In January, 1978 John J. Degnan succeeded William F. Hyland as Attorney General. Internal memoranda of the Attorney General's office disclose that up to then it was the position of that office not only that there was no violation of ethical standards, but that its advice to the board that it had power to act on Dr. Herz's application was correct. Shortly after Mr. Degnan's appointment he received a letter from Adella C. Youtz on behalf of the Association, reading in part:

A Bill of Particulars is attached which was prepared for Governor Byrne's attention. The following issues represent a conflict of interest event and an on-going problem:

1) The Governor appointed Dr. Sylvia Herz as a consumer member of the Board of Psychological Examiners, although she had applied and been denied licensure under the "grandfathering" clause of the laws of New Jersey, Chapter 282, Pl 1966, in 1967.

2) A protest at that time by Chairman of the Board, Dr. Morris Goodman, was followed by termination of Dr. Goodman's appointment to the Board and subsequently the reappointment of Dr. Sylvia Herz as consumer member.

3) In 1977, ten years after the termination of grandfathering privilege for licensure under the practicing psychologists' act, Dr. Herz brought her case to fellow board members for reconsideration.

4) Mr. Joseph Ferraro, counsel to the Board, no doubt recognizing the political nature of her repeated appointment to the Board, advised the Board that they could legally confer licensure after ten years.

5) Following the awarding of licensure Dr. Herz was reappointed consumer

member under the exclusionary clause in S–1010 which means that safeguards in that law do not apply to present members of the Boards.

6) As we see it conflict of interest has three components:

a) Dr. Herz, as an appointed government official, and sitting member of the Board of Psychological Examiners, has had her own status and financial potential enhanced by now being qualified to provide private treatment as a psychologist; b) the Board of Psychological Examiners is co-responsible as a group for jeopardizing the reputation of the Board of Psychological Examiners by permitting a sitting member of the Board to become licensed under the grandfathering clause after a calculated delay in appeal; c) when a co-member has received licensure involving special and personal exceptions, each voting Board member might expect, or could receive in years to come, particular preference in referrals of patients as a result of the special consideration to Dr. Herz; d) although there is no current evidence that financial or political gain has resulted for the several members of the Board, the obligation of the members is not only to avoid personal gain but to avoid the "appearance" of conflict of interest, in order to maintain the good name of the Board of Psychological Examiners in the State of New Jersey.

App. at 146–47. Although the new Attorney General adhered to the position taken by his predecessor that no violation of the New Jersey Conflict of Interest Law had occurred, his office undertook reconsideration of the board's power to reconsider Dr. Herz's application. By then her license had long since been issued. Several internal memoranda were prepared by Deputy Attorneys General to the effect that the board did have power to act. App. at 160, 163, 168. Nevertheless First Assistant Attorney General Paul Levy took the position that issuance of the license was illegal and requested Dr. Herz to surrender it. When she declined, on April 10, 1978 the new Attorney General issued a formal opinion-letter to the board stating that the board had exceeded its authority in issuing the license. App. at 21. The reason advanced for that opinion was that Dr. Herz had not "acted within a reasonable time or with reasonable diligence in again seeking licensure by the Board." App. at 22. The board declined to accept the Attorney General's position, pointing out that he was mistaken in his belief that for nine years Dr. Herz had made no effort to obtain reconsideration, and that it, not the Attorney General, is the body authorized to determine whether the applicant acted within a reasonable time and with reasonable diligence. App. at 19, 20. On July 19, 1978 the Attorney General responded, conceding that New Jersey administrative agencies had the power to reopen or modify prior decisions, but urging that this power must be exercised reasonably and that the application "must be made within a reasonable time with due diligence." App. at 23. At that time he advised the board that he did not intend to proceed formally to secure revocation of Dr. Herz's license. So the matter rested for almost a year.

When Dr. Herz paid a renewal fee her license was automatically renewed pursuant to N.J.S.A. 45:14B–23. The Attorney General apparently took umbrage at the board's action in issuing a renewal license, and on June 8, 1979 the Attorney General's office prepared a letter to the board advising it to issue an order to show cause in a hearing before an administrative law judge why her license should not be withdrawn "for the reasons set forth in our prior opinion." App. at 25–26. That letter was presented to the board by representatives of the Attorney General's office at its regular meeting on June 11, 1979. At its next meeting, on June 25, 1979, the board declined to issue an order to show cause, but asked the Attorney General's office to put together a chronological history of the case so that the board would be better informed. App. at 204. Dissatisfied with that response, the Attorney General *ex parte* and *sua sponte* made the following order:

This matter having been opened by John J. Degnan, Attorney General of New Jersey, pursuant to authority conferred by N.J.S.A. 45:1–17(c) and after a full consideration of the relevant facts and applicable law,

IT IS on this 28th day of June, 1979 ORDERED:

1. The grant of licensure and renewal thereof of SYLVIA HERZ by the Board of Psychological Examiners be and hereby is set aside.

2. The Board of Psychological Examiners and the Bureau of Enforcement shall take such steps as may be necessary to retrieve the license previously issued to SYLVIA HERZ.

3. Application may be made by SYLVIA HERZ to reopen the determination of the Board, dated June 24, 1968, denying licensure to her by examination of credentials and, upon receipt of such an application, the Board shall refer the matter to an Administrative Law Judge for a full evidentiary hearing to decide whether a proper basis has been demonstrated to reopen the June 24, 1968 determination of the Board and to grant licensure to SYLVIA HERZ.

JOHN J. DEGNAN
ATTORNEY GENERAL OF NEW JERSEY

App. at 246.

This order prompted the filing of Dr. Herz's complaint, alleging that it violated her substantive and procedural constitutional rights. She moved for a preliminary injunction against enforcement of the June 28, 1979 order, and, after a hearing, on November 5, 1979 an order was entered setting it aside and enjoining the Attorney General from enforcing it. App. at 95. No appeal was taken from that preliminary injunction, and the appellants do not on this appeal defend the June 28, 1979 order.

Meanwhile, after the complaint was served, the Attorney General requested the board to hold a hearing to resolve the Herz matter. It agreed to hold a special meeting on November 19 to consider this demand. Between October 10 and November 19, four board members were replaced. The record suggests that the Attorney General was instrumental in selecting the replacements who would be more tractable than those members who had defied his directions in the Herz matter. Degnan deposition, Appellee's App. at 75, lines 2–21; 85–86, lines 22–25. Six representatives of the Attorney General's office attended the November 19 meeting. The reconstituted board agreed to call for a hearing to determine relevant facts and points of law concerning the licensure of Dr. Herz. On January 14, 1980 a document, prepared by the Attorney General's office, signed by the new board chairman but not considered by other members of the board, entitled "Order for Hearing" was served on Dr. Herz. The board has statutory authority to refuse to renew, revoke, or suspend a license for specific grounds set out in N.J.S.A. 45:14B–24. The "Order for Hearing" does not make any charge that would fall within that statute, and the appellants do not contend that Dr. Herz has committed any act which would justify revocation or suspension. When the "Order for Hearing" was served, Dr. Herz moved for leave to file an amended complaint adding the board as a party defendant. Leave was granted.

Upon completion of discovery both sides moved for partial summary judgment. The Attorney General's motion was denied. The plaintiff's motion was granted and judgment entered as follows:

[1.] The defendants, John J. Degnan and the New Jersey Board of Psychological Examiners (hereinafter "the Board"), are permanently enjoined and restrained from seeking the revocation or in any other respect interfering with plaintiff's license to practice psychology in the State of New Jersey, except for reasons and in accordance with procedures set forth in statutes of New Jersey for the suspension or revocation of such licenses, and, more specifically, the said defendants are permanently enjoined from seeking the revocation or in any other respect interfering

with the plaintiff's license to practice psychology in the State of New Jersey for the reasons set forth in the defendant Degnan's communications to the Board dated April 10, May 4, and July 19, 1978, and June 8, June 27, and October 17, 1979, or for the reasons considered by the Board at its meeting of November 19, 1979, or as a result of any order or action that may arise out of the Board's Order for Administrative Hearing issued on January 14, 1980.

[2.] With respect to the Board's Order for Administrative Hearing issued on January 14, 1980, the Office of Administrative Law may proceed with such hearing only in so far as it is concerned with the possibility of developing general rules for prospective application and is not an adversary hearing directed at seeking the suspension or revocation of plaintiff's license to practice psychology. The plaintiff shall not be required to attend any such rule-making hearing excepting in the capacity of a witness and subject to such subpoena power as may be available under the laws of the State of New Jersey to compel her attendance, if the same is sought.

This appeal followed.

## II

The Attorney General advances two reasons for reversing the judgment. First he contends that there has been no violation of any constitutionally protected right. Second, he urges that the complaint should have been dismissed on abstention grounds. We reject both contentions.

## A

■ The trial court held that Dr. Herz has a constitutionally protected property interest in her license to practice as a psychologist. That holding is undoubtedly correct. *See, e. g., Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1977). The court also noted that there is no dispute that she had the necessary qualifications for licensure at the time of her initial application. Appellants do not contend otherwise. Un-der the licensing statute the holder of a license is entitled to automatic renewal upon completion of a form and payment of a fee. N.J.S.A. 45:14B-23. The only grounds for non-renewal, revocation, or suspension are those specified in N.J.S.A. 45:14B-24, none of which are applicable to Dr. Herz. Even with respect to the seven grounds listed in the statute for non-renewal, revocation, or suspension, such action may not be taken "until after a hearing of the charges against the accused ... and at least 20 days prior written notice to the accused of the charges against him and of the date fixed for such hearing." N.J.S.A. 45:14B-24. Concededly the attempt by the Attorney General to cause the revocation of Dr. Herz's license is not in compliance with the governing statute, either substantively or procedurally.

Disingenuously, the Attorney General urges that what he proposes is not a revocation, but a "rescission." We see no distinction. Furthermore, the governing statute makes no provision for rescission, and it is the statute which defines the state law property expectations of the licensee. These expectations are in turn protected by the due process clause of the fourteenth amendment. Rescission, as distinct from revocation, is nowhere mentioned, either in N.J.S.A. 45:14B-24 or in a subsequently enacted statute generally applicable to professional boards, N.J.S.A. 45:1-21, L.1978, ch. 73, § 8. Neither in section 24 of the psychologist licensing law nor in section 8 of the general law relating to professional boards is there listed as a ground for suspension or revocation the ground on which the Attorney General relies—lack of due diligence (in his view) in seeking reconsideration of an initially adverse ruling. Thus the purpose of the Attorney General in advancing his "rescission" theory is to permit the removal of a license for grounds other than those specified by the New Jersey legislature.

The Attorney General urges that, although there is no statutory warrant for his theory that a license may be "rescinded" because of a procedural error in its issuance not bearing upon the qualifications of the licensee, the common law of New Jersey

affords such authority to every administrative agency. The authorities relied upon are a series of cases beginning with *Handlon v. Town of Belleville*, 4 N.J. 99, 71 A.2d 624 (1950), the most recent of which is *Duvin v. State*, 76 N.J. 203, 386 A.2d 842 (1978), holding or stating that administrative tribunals have inherent power of reconsideration of their actions, barring statutory regulation.[3] None of the cases relied upon involved the grant of a license to practice a profession. Moreover none involved a statutory scheme such as the one before us, in which the legislature specified the grounds for non-renewal, suspension, or revocation. And in no case involving revocation of a benefit to which the Attorney General refers us did the court hold that absent fraud or other misconduct an agency could *sua sponte* decide to pass again upon eligibility for a license or other benefit previously granted. Many of the cases relied upon involved charges of fraud or other overreaching in obtaining an award of an ongoing pension from a public pension system. *See, e. g., Skulski v. Nolan*, 68 N.J. 179, 343 A.2d 721 (1975); *Ruvoldt v. Nolan*, 63 N.J. 171, 305 A.2d 434 (1973). In contrast, in *Duvin v. State*, 76 N.J. 203, 386 A.2d 842 (1978), the court permitted reopening of a benefit by way of allowing alternative computation of a pension not to deprive the recipient but to confer a greater benefit. The grounds for reconsideration recognized as a matter of common law in the cases of revocation do not, as we understand them, go beyond the initial ground specified by the legislature in section 24(a) of the psychologist licensing law:

> Use of fraud or deception in applying for a certificate or in passing the examination therefor required by this act.

N.J.S.A. 45:14B–24. The injunction appealed from leaves the board entirely free to proceed against Dr. Herz under section 24(a), and thus entirely free to accomplish what absent the statute the Supreme Court of New Jersey has recognized as grounds for reopening agency decisions. The Attorney General, however, concedes that on this record no charge of fraud or deception is made against Dr. Herz. He concedes that the board had the power to reconsider its initial denial and grant a license. He concedes that Dr. Herz is in fact qualified. At this point his only ground for revoking the license is that the board could have refused to reconsider its previous denial because the application for reconsideration was untimely. The record is clear that the board in 1977 considered the timeliness issue and acted on it in conformity with legal advice from the Attorney General's office. The New Jersey case law relied on nowhere suggests that a change of Attorneys General is a valid reason for reconsidering administrative action which created a vested property right. If it did, that law would not meet due process standards.

### B

The Attorney General contends, alternatively, that his motion for a summary judgment dismissing the complaint should have been granted on the authority of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. The trial court properly declined to dismiss. That line of authorities suggests that federal courts of original jurisdiction should dismiss complaints challenging state action on federal constitutional grounds when there is a pending state judicial proceeding to which the state is a party. *See Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Neither the Supreme Court nor this court has suggested that the pendency of a proceeding such as the "Order for Hearing" which the Attorney General instigated after the commencement of this action requires that a plaintiff be deprived, after substantial litigation has occurred in the district court, of her choice of a federal forum. *Cf. Garden State Bar Ass'n v. Middlesex County Ethics Committee*, 643 F.2d 119 (3d Cir. 1981); *New Jersey Education Ass'n v. Burke*, 579 F.2d 764 (3d Cir. 1978). Moreover the undisputed involvement of the New Jersey Psychological Association, the *ex parte* and unsupportable June 28,

---

**3.** *See also Skulski v. Nolan*, 68 N.J. 179, 343 A.2d 721 (1975); *Ruvoldt v. Nolan*, 63 N.J. 171, 305 A.2d 434 (1973).

1979 order of the Attorney General, the adoption of a new tactic after that order was enjoined, and the change in membership of the board, all suggest rather strongly that even if the "Order for Hearing" were a proceeding to which *Younger* principles were somehow relevant, this may be a case falling within the "bad faith and harassment—official lawlessness" exception. *See Younger v. Harris*, 401 U.S. at 56, 91 S.Ct. at 757.

Although in their brief appellants recognized that a *Pullman*-type abstention order, *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is not appropriate, on oral argument and by post-argument submissions they contended that it is. Because we see no ambiguity in the state law, we reject this contention.

### III

■ The trial court properly decided to proceed with the case, and properly granted partial summary judgment enjoining the Attorney General and the board from rescinding Dr. Herz's license in a manner which violated due process of law. The judgment appealed from will be affirmed.