Abraham LAUDERMILK and
M.C. Rogers, Plaintiffs,

v.

Governor Kirk FORDICE, et al.

Civil Action No. 1:95cv161–D–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

Dec. 12, 1996.

Ruby White, North Mississippi Rural Legal Services, Grenada, MS, Nancy Hunt Stewart, North Mississippi Rural Legal Services, West Point, MS, for Plaintiffs.

Leonard McClellan, Mississippi Attorney General's Office, Jackson, MS, for Defendants Kirk Fordice, Governor, etc. and Mike Moore, Attorney General.

H. Russell Rogers, II, Starkville, MS, for Defendants Board of Supervisors, Supervisors and County Tax Collector.

*MEMORANDUM OPINION*

DAVIDSON, District Judge.

Presently before the court are the motions of both the plaintiffs and the defendants for the entry of summary judgment on their behalf. Finding that the motion of the plaintiffs is well taken, the undersigned shall grant it and enter judgment for them in this action. Finding that the motion of the defendants is not well taken, the undersigned shall deny it.

I. Factual Background [1]

Mississippi statutes provide that a county board of supervisors may operate a county-wide garbage and rubbish disposal system. Miss.Code Ann. § 19–5–17. Further, the board may levy ad valorem taxes or assess and collect fees to fund such a system. Miss. Code Ann. § 19–5–21. This statutory scheme also provides that:

> The board of supervisors may notify the tax collector of any unpaid fees assessed under Section 19–5–21 within ninety (90) days after the fees are due. Upon receipt of a delinquency notice, the tax collector shall not issue or renew a motor vehicle road and bridge privilege license for any motor vehicle owned by a person who is delinquent in the payment of fees unless those fees, in addition to any other taxes or fees assessed against the motor vehicle, are paid.

Miss.Code Ann. § 19–5–22(4)(a) (Supp.1996) (formerly Miss.Code Ann. § 19–5–22(3)). The implementation of this provision by the Oktibbeha County Board of Supervisors has given rise to this action. The parties have agreed to the following stipulation of facts:

1. Abraham Laudermilk and M.C. Rogers, Plaintiffs, are residents of rural Oktibbeha County.

2. The Plaintiffs reside in areas of the county wherein the Oktibbeha County Board of Supervisors has statutory authority to provide for garbage collection.

---

1. In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Rather, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

3. Both of the Plaintiffs own motor vehicles and use the vehicles to travel to and from town to obtain the necessities of life.

4. The Plaintiffs are not exempt from state law requiring a valid car tag.

5. Messrs. Laudermilk and Rogers were each provided written notice of their delinquent status with regard to non-payment of fees for garbage collection and disposal.

6. Messrs. Laudermilk and Rogers received written notification of the opportunity to pay their accounts current and that a failure to do so would result in their inability to renew or obtain a new car tag.

7. Messrs. Laudermilk and Rogers, without paying their accounts current, attempted to purchase or renew a car tag.

8. Messrs. Laudermilk and Rogers were unable to renew or purchase car tags due to the delinquent status of their accounts with regard to fees for the collection and disposal of garbage.

9. Messrs. Laudermilk and Rogers were not provided a hearing prior to the non-renewal of their car tags.

10. While State statute does not provide for a hearing, there is no evidence Messrs. Laudermilk or Rogers made a formal request for a hearing, or received a hearing from the county.

11. Oktibbeha County's policy is to grant no exemptions for personal or financial reasons; the only exemption allowed is a Department of Environmental Quality Disposal Permit and Messrs. Laudermilk and Rogers did not present a Department of Environmental Quality Disposal Permit to the Board.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Federal Sav. & Loan Ins. v. Kralj,* 968 F.2d 500, 503 (5th Cir.1992). The facts are reviewed drawing all reasonable inferences in favor of the party opposing the motion. *Matagorda County v. Russell Law,* 19 F.3d 215, 217 (5th Cir.1994).

### B. Procedural Due Process

■ In their complaint, the plaintiffs challenge the facial validity of Miss.Code Ann. § 19-5-22(4) (1996 Supp.), as well as Oktibbeha County's application of that statutory provision to them. However, the only ground upon which they make their challenge is their assertion that the statutory provision and its application to them is unconstitutional as a violation of the constitutional guarantees of procedural due process. U.S. CONST. AMEND XIV, § 1 ("[N]or shall any State deprive any citizen of life, liberty, or property, without due process of law."); MISS. CONST., ART. III, § 14 ("No person shall be deprived of life, liberty, or property except by due process of law."). As both parties recognize, in order to trigger the procedural due process protections of the Fourteenth Amendment[2], the claimant must

---

2. As the defendants so aptly point out to the court, the requirements of due process under the Mississippi Constitution are coextensive with that of due process under the Fourteenth Amendment of the Untied States Constitution. *Secretary of State v. Wiesenberg,* 633 So.2d 983, (Miss.1994); *Mississippi Power Co. v. Goudy,* 459 So.2d 257,

suffer a deprivation of a protected interest: life, liberty or property. Only after it is found that the plaintiffs have been deprived of such an interest does the inquiry turn to the sufficiency of the process received.

### 1. Property Interest

▮ The first issue to be addressed, then, is whether the plaintiffs possess a constitutionally protected interest. The plaintiffs do not argue that they possess a liberty interest in this case, but rather that they possess a property interest in the retention of state-issued automobile license tags. In determining whether the plaintiffs possess such a property interest, this court must first look to state law to determine if there is an underlying substantive interest. Then, the court turns to federal constitutional law to determine if that interest rises to the level of a "legitimate claim of entitlement.". *Memphis Light, Gas & Water v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30, 39 (1978); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The plaintiffs rely heavily in their argument to this court upon the decision of *Bell v. Burson*, in which the United States Supreme Court found a protected property interest in a driver's license under Georgia law. *Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90, 94 (1971). In *Bell*, the court determined without much effort that the plaintiff possessed a property interest in the retention of his driver's license:

> If the statute barred the issuance of licenses to all motorists who did not carry liability insurance or who did not post security, the statute would not, under our cases, violate the Fourteenth Amendment. It does not follow, however, that the amendment also permits the Georgia statutory scheme where not all motorists, but rather only motorists involved in accidents, are required to post security under penalty of loss under the licenses. Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the

licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

*Bell*, 402 U.S. at 539, 91 S.Ct. at 1589, 29 L.Ed.2d at 94.

The defendants respond that the case at bar is distinguishable from cases like *Bell* where licenses were revoked, stating "Plaintiffs ... are not faced with the suspension or revocation of their license plates, but are being denied the opportunity to renew their plates." Defendants' Memorandum Brief, p. 5. This court finds the difference only semantical. A state's characterization of an interest as a "privilege" is not dispositive of whether that interest is a protected right under the Fourteenth Amendment, for federal constitutional law determines whether or not an interest is protected by the requirements of procedural due process:

> This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.'

*Bell*, 402 U.S. at 539, 91 S.Ct. at 1589, 29 L.Ed.2d at 94. Likewise, this court finds the state's distinction between "revoked" and "not renewed" non-dispositive. *See, e.g., Easter House v. Felder*, 852 F.2d 901, 912 (7th Cir.1988) (finding property interest in *renewal* of adoption agency license); *Herz v. Degnan*, 648 F.2d 201, 208 (3d Cir.1981) (finding property interest in *renewal* of license to practice psychiatry); *Reed v. Village of Shorewood*, 704 F.2d 943, 948–49 (7th Cir. 1983) (finding property interest in *renewal* of liquor license).

The question is whether the plaintiffs possess under Mississippi law a property interest in the retention of their automobile license tags, and whether that interest constitutes "a legitimate claim of entitlement." This court is of the opinion that the continued possession of car tags implicates important interests of the plaintiffs. Once issued, the plaintiffs' possession of their car tags became essential to living in a rural community such as Oktibbeha County. The defen-

275 (Miss.1984). Therefore, there is no reason

to devote a separate discussion to each provision.

dants even recognize the importance of the plaintiffs' continued possession of their car tags, albeit in a somewhat different context. *See, infra,* at II(B)(2)(a). In light of *Bell v. Burson* and its justification, the undersigned finds it hard to fathom how one can have a protected property interest in the retention of a driver's license yet not have such a protected interest in a car tag. Indeed, the parallels between these two "privileges" are uncanny. Nevertheless,. this court must still first look to Mississippi law to determine if such an interest exists.

There is no express statutory provision which imposes a general obligation upon state officials to issue or renew car tags upon compliance with Mississippi's requirements for the issuance of such a tag. State statutory law only provides ambiguous statements of obligation, such as:

> License tags, substitute tags and decals for private carriers of passengers ... shall be sold and issued by the tax collectors of the several counties....
>
> . . .
>
> No tag or decal shall be issued by a tax collector or by the commission without the collection of [registration fees].

Miss.Code. Ann. § 27–19–43(1), (3). On the other hand, there is likewise no provision which affords state officials with any discretion to deny the issuance of a car tag once all statutory requisites for the issuance or renewal of the tag have been met. However, in instances where the legislature has provided for other, "special" tags, state officials are **required** to issue tags when the applicant has complied with Mississippi's statutory provisions:

> Upon receipt of an application for a special antique automobile plate, on a form prescribed by the commission, and upon payment of the fee as proscribed in subsection (2) of this section, the tax collector **shall**

**issue** to such applicant a special antique automobile plate on a permanent basis....

Miss.Code Ann. § 27–19–47.

> Owners of motor vehicles who are residents of this state, upon complying with the motor vehicle laws relating to registration and licensing of motor vehicles, and upon payment of the road and bridge privilege taxes, ad valorem taxes and registration fees as prescribed by law for private carriers or passengers ..., and upon payment of an additional fee in the amount provided ..., **shall be issued** a personalized license tag....

Miss.Code Ann. § 27–19–48.

These provisions are merely examples throughout Mississippi's statutory scheme which require the issuance of tags after statutory obligations are met. Miss.Code Ann. § 27–19–1, et. seq. After a reading of this scheme as a whole, it is apparent that the Mississippi legislature did not intend to empower state officials with the unfettered discretion to deny the issuance or renewal of car tags to its citizens who have not applied for "special" tags. It is this court's determination that under Mississippi law, a person who pays the relevant taxes and fees, in addition to complying with other relevant statutory provisions, is entitled to the issuance of a car tag so that he or she may legally operate a motor vehicle on the roads and highways of the state of Mississippi. Nothing under Mississippi law allows state officials to arbitrarily refuse to renew a citizen's automobile license tag, and this court suspects that it has not been the practice of county tax collectors to refuse the issuance and renewal of tags without some statutory reason for denial.[3]

Because state officials are so required to issue or renew car tags unless the applicant has failed to comply with a statutory requisite (e.g., failure to pay ad valorem taxes) the applicant possesses a "legitimate claim of entitlement" to the issuance or renewal of his car tag. Stated in another manner, tax collectors may only deny the issuance of car

---

**3.** While there is no such evidence before the court, a property interest may be established by "policies, customs, practices, and understandings." *See, e.g., Kaiser Aetna v. United States,* 444 U.S. 164, 179, 100 S.Ct. 383, 393, 62

L.Ed.2d 332 (1979); *Winegar v. Des Moines Indep. Comm. Sch. Dist.,* 20 F.3d 895, 899 (8th Cir.1994); *Richardson v. Town of Eastover,* 922 F.2d 1152, 1156 (4th Cir.1991).

tags "for cause." Such "cause" might be the failure to pay required taxes or the failure to file a proper application. In this case, the asserted cause is the plaintiffs' failure to pay garbage collection fees. Miss.Code Ann. § 19–5–22(4)(a) (1996 Supp.). Whether the state may deny the renewal of tags for such a cause is not the issue, for regardless of what cause is imposed, the mere fact that state officials are required to have such cause triggers the protections of procedural due process.

In that state citizens are entitled to the issuance of car tags except for specified reasons, the plaintiffs possess a legitimate claim of entitlement to the continued possession of car tags which they may invoke at a due process hearing. *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *see Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Bell*, 402 U.S. at 539, 91 S.Ct. at 1589, 91 S.Ct. at 1589; *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). It is this court's finding, then, that the plaintiffs in this case have a constitutionally protected property interest in the retention of their car tags. With that finding made, it is this court's duty to determine if the plaintiffs have been given the process due them.

2. What Process is Due?

██ The parties correctly note that the determination of what process is due the plaintiffs is contingent upon the application of a balancing test enunciated by the United States Supreme Court:

More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see also United States v. James Daniel Good Real Property*, 510 U.S. 43, 53, 114 S.Ct. 492, 501, 126 L.Ed.2d 490 (1993); *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990).

The *Mathews* inquiry may be better understood when expressed in mathematical terms. A procedural safeguard ("A") will only be required if the amount at stake to the individual ("S"), added to the risk of erroneous deprivation under the procedures currently used ("R") and the probable value of additional or substitute safeguards ("V"), is greater than the government's interest ("G"), which includes the administrative and financial burden of additional or substitute safeguards.

**If $(S + R + V) > G$, then A is required.**

Armed with this *Mathews* calculus, the court may now determine what process was due the plaintiffs in this case.

a. S = the amount at stake to the individual

Were this matter to come to trial, the undersigned could take judicial notice of the fact that Oktibbeha County, like almost every county in the state of Mississippi, has no public transportation system which would adequately meet the needs of the plaintiffs in this case. As such, as the parties have stipulated, the plaintiffs rely upon their own motor vehicles to obtain "the necessities of life."

As residents of a rural community, [the plaintiffs] do not have access to public transportation like urban dwellers. Likewise, because they live in rural Oktibbeha County, stores, businesses, pharmacies, hospitals and other vital markets and services are not within walking distance.

Plaintiffs' Memorandum Brief, p.6. The value of legal transportation by automobile in a rural Mississippi county is self-evident, and the defendants concede that this factor weighs in favor of the plaintiffs in this case. Defendants' Memorandum Brief, p. 65 ("The significance of the private interest affected by the denial of license plates' renewals to the Plaintiffs is substantial given the impor-

tance of motor vehicle transportation, especially in rural areas. Therefore, this factor favors Plaintiffs.").

b. R = the risk of erroneous deprivation under current procedures

■ However, the defendants do argue to the court that there is "little or no risk" of erroneous deprivation under this statutory scheme. The defendants contend to the court:

> All households are charged the same monthly fee and are provided a notice when the fee is delinquent. The notice contains the amount of the delinquent fee and informs of the consequences of failure to pay. Furthermore, Plaintiffs do not contend that they do not owe the fee or that the amount of the fee is inaccurate. Since Plaintiffs do not contend that the amount of the delinquent fee is inaccurate and cannot demonstrate a high risk of error in the amount of the delinquent fees, this second factor favors the Defendants.

Defendants' Memorandum Brief, p. 6. Contrary to the implication of the defendants in their brief, it is not essential that there be a "high risk" of error in the calculation of delinquent fees in order for this court to find that the Fourteenth Amendment requires the defendants to provide procedural due process before refusing to renew the plaintiffs' car tags. Rather, this court must determine to what degree any risk of erroneous deprivation extends and afford that risk its proper weight in the *Mathews* calculus. Likewise, the defendants appear to argue that the plaintiffs are required to show that there is a risk of erroneous deprivation *in this particular case* if procedural safeguards are not imposed. Defendants' Brief, p. 10 (arguing that due process hearing "would be futile and a waste of time where, as here, the accuracy of the delinquent fee is not contested ... "). This argument is misplaced, for the dictates of procedural due process do not fluctuate with the individual merit of each citizen's circumstances. *See Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978) (noting procedural due process violation actionable even though deprivation justified). The Fourteenth Amendment applies equally to protect all citizens, and this

court must discern the objective *risk* of deprivation of *any* citizen's property right under the currently utilized procedures.

Inherent in the operation of any administrative scheme is the risk of clerical or administrative error. Under the scheme at bar, that risk could result in erroneous deprivations for many reasons—e.g., because of a county employee's failure to record paid fees, send required notices, or even maintain correct addresses for county residents. By virtue of this inherent risk alone, there is a cognizable risk of erroneous deprivation. Neither party has presented the court with evidence of the administrative safeguards presently in place for the implementation of this scheme. Based upon the lack of evidence presently before the court, the undersigned cannot say that the risk of erroneous deprivation is substantial. Nevertheless, an inherent risk of error is both present and material. No administrative institution is without some base level of clerical error and oversight. In addition, the present enactment of the scheme provides that the county board of supervisors may provide for various exemptions from the imposition of any garbage fees. Miss.Code Ann. § 19–5–21(4), (5). There is also a risk that fees may be wrongfully imposed, and license tags denied, to persons who are in fact exempt from the fees. Here again, that Oktibbeha County does not provide for any such exemptions does not affect the *facial* validity of the statute.

The level of risk in the present case is exacerbated by the lack of procedural safeguards in the statutory provision itself. The original enactment, Miss.Code. Ann. § 19–5–22(3), contained no procedural provisions whatsoever. It merely stated that the Board of Supervisors is to notify the Tax Collector of any unpaid fees, and that the Tax Collector "shall not issue or renew a motor vehicle road and bridge privilege license for any motor vehicle owned by a person who is delinquent in the payment of fees unless those fees .... are paid." *Id.* The only procedural protection contained in the current version of the statute is that:

> The designated county official or the billing and collection entity shall notify, in

writing, any person who is delinquent that his license tag will not be issued until the delinquent fees are paid and enclose the procedure required for the payment of the delinquent fees.

Miss.Code Ann. 19–5–22(4)(c) (Supp.1996). This does indeed allow for some form of notice to be given, but does nothing to provide for a hearing "appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950) (stating "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). On its face, the statute provides no opportunity for determination of clerical error, or for that matter, any type of error. When looking to this *Mathews* factor in light of the plaintiffs' facial challenge to Miss.Code Ann. § 19–5–22(4)(a) (Supp.1996), this factor most certainly favors the plaintiffs.

When looking to this factor in light of the "as applied" challenge, however, this factor's impetus loses momentum. The fact that Oktibbeha County has not enacted any exemptions to the imposition of garbage fees is indeed relevant to this inquiry and eliminates a fertile ground for error. Nevertheless, this decrease in the risk of error does not sway this factor's weight to the defendants' corner, particularly in light of the lack of any procedural safeguards [4] to protect from the impact of even mere clerical errors. The procedures presently utilized by Oktibbeha County (or the lack thereof) for the implementation of this statutory scheme are inadequate when compared to the risk of erroneous deprivation in this case, and this factor also weighs

in favor of a finding for the plaintiffs on the "as applied" challenge.

### c. V=value of additional or substitute safeguards

Additional safeguards under the present statutory scheme would do much to ensure that erroneous deprivations are prevented. At a minimum, an opportunity for a hearing in front of a state Justice Court Judge or county administrative officer would provide an avenue for resolution of clerical or other errors. As it stands, no adjudicative entity is even available to hear evidence of an administrative *faux pas*. Parties could easily be informed of their right to a hearing in the same notice they receive telling them that their garbage fees are delinquent. Miss. Code Ann. 19–5–22(4)(c) (1996 Supp.). In most cases, hearings should be conducted pre-deprivation and postdeprivation procedures may provide adequate due process for deprivations only in limited circumstances. *James Daniel*, 510 U.S. at 52, 114 S.Ct. at 500 ("An exception to the general rule requiring predeprivation notice and hearing is justified only in extraordinary situations."); *Zinermon*, 494 U.S. at 132, 110 S.Ct. at 987 ("[I]n situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake ... or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process.").

The court has been informed of no exigent circumstances that would make post-deprivation hearings sufficient.[5] Typical circumstances involving the disposal of last week's uneaten pizza and used paper towels would not give rise to such an emergency public

---

4. Oktibbeha County has apparently been providing the opportunity for post-deprivation hearings in these types of cases since the filing of this suit. Plaintiffs' Brief, p. 8 ("In the present case, the board initiated a post-deprivation hearing in Oktibbeha County Justice Court after this federal suit was filed."). The existence of such hearings does not affect this court's analysis. The fact is irrelevant to the facial validity of § 19–5–22(4) as that provision does not provide for such a procedure, and is likewise not probative to the "as applied" challenge as these particular plaintiffs were not provided with such a post-deprivation hearing.

5. As noted *infra*, however, a citizen's delinquency status may arise within such a close temporal proximity that a predeprivation hearing would be impractical. This would likely be a rare occurrence, but it would nonetheless justify an adequate post-deprivation hearing. As the statute on its face does not even provide for a post-deprivation hearing and as these plaintiffs were not provided with any type of hearing, the issue does not hinder this court's analysis.

health situation as would require immediate action on the part of the county. Even if the garbage involved was of such a dangerous nature, nothing prevents the county from disposing of the waste and then afterwards pursuing the landowners for delinquent fees. Miss.Code Ann. § 19–5–17.

As county officials already keep track of when car tags come up for renewal, any citizen could easily be granted his due process hearing prior to deprivation. This is assuming, of course, that the citizen's delinquency status is established sufficiently before the scheduled time for tag renewal so that notice may be given and a pre-deprivation hearing may be conducted. *See, e.g., Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (holding adequate post-deprivation hearings satisfy due process where pre-deprivation hearings are impractical). This court finds that additional safeguards, such as the opportunity for a meaningful pre-deprivation hearing, would have much value in protecting the plaintiffs' property interests in this case.

### d. G = the government's interest

On this point, the defendants spend several pages of their Memorandum Brief addressing the constitutional validity of state statutes which allow local governments to impose mandatory garbage collection fees. However, they cite no decisions where any such statutes were analyzed for validity under the constitutional restraints imposed by the dictates of *procedural due process. E.g., California Reduction Co. v. Sanitary Reduction Works,* 199 U.S. 306, 318, 26 S.Ct. 100, 103, 50 L.Ed. 204 (1905) (finding mandatory collection of garbage not a "taking" under the Fourteenth Amendment which required just compensation); *Gardner v. Michigan,* 199 U.S. 325, 331, 26 S.Ct. 106, 108, 50 L.Ed. 212 (1905) (same); *Craig v. City of Macon,* 543 S.W.2d 772, 775 (Mo.1976) (finding mandatory garbage collection fee not violative of Equal Protection clause). The only cases cited by the defendants which do pertain to due process only stand for the proposition that the imposition of such mandatory schemes do not violate the *substantive due process* rights of citizens. *E.g., United States v. Coastal States Crude Gathering Co.,*

643 F.2d 1125, 1127 (5th Cir.1981) (finding imposition of civil penalties for waste spills not violative of substantive due process under Fifth Amendment); *Cassidy v. City of Bowling Green,* 368 S.W.2d 318, 320 (Ky. 1963) (same); *City of Glendale v. Trondsen,* 48 Cal.2d 93, 308 P.2d 1, 5 (1957) (same). This court's present inquiry is not whether Miss.Code Ann. § 19–5–22 was enacted "under the police power for a legitimate state goal, that being the protection of the health and welfare of its citizens," as the defendants argue to the court. Such a determination would be appropriate if this court were engaging in a substantive due process analysis. *See, e.g., Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (state's exercise of police power presumed constitutional unless legislature acted in "arbitrary and irrational" manner). Regardless of whether Mississippi has the authority to permit Oktibbeha County to impose and collect mandatory garbage collection fees, Oktibbeha County may not impose such fees in a manner which deprives its citizens of their property rights in violation of the Fourteenth Amendment's guarantee of procedural due process.

The defendants present no evidence relevant to the extent of any undue imposition that would be placed upon the state to conduct hearings in instances such as the one at bar, other than to make the conclusory statement that "[i]t would obviously impose a heavy administrative and fiscal burden upon the county to provide an administrative hearing to everyone ..." Defendants' Memorandum, p. 10. There most certainly would be costs involved, both monetarily and administratively. Nevertheless, the court is of the opinion that the county would have to expend a minimal amount of money and additional administrative energy to ensure that each person receives notice and an opportunity for a meaningful pre-deprivation hearing. Not only does the county already provide mailed notices that could be easily modified, but existing judicial institutions such as the Oktibbeha County Justice Court or the County Board of Supervisors itself are available to serve as a hearing body. Finally, it must be remembered that "[w]hile the problem of

additional expenses must be kept in mind, it does not justify denying a hearing meeting the ordinary standards of due process." *Bell,* 402 U.S. at 540, 91 S.Ct. at 1590, 29 L.Ed.2d at 95 (quoting *Goldberg,* 397 U.S. at 261, 90 S.Ct. at 1017, 25 L.Ed.2d at 295).

### e. Calculation

When considering the relatively minimal cost of providing an opportunity for a hearing before a judicial or county administrative officer in conjunction with the government interest involved, application of the *Mathews* calculus lands this court's decision with the plaintiffs and their interest in legal automotive transportation. This court is of the opinion that the amount at stake to the plaintiffs, added to the risk of erroneous deprivation under the procedures currently used and the probable value of additional or substitute safeguards, is in fact greater than the government's interest, including the administrative and financial burden of additional or substitute safeguards. Additional procedural safeguards, namely the opportunity for a meaningful pre-deprivation hearing, are required before the present version of Miss. Code Ann. § 19–5–22(4) will comply with the procedural due process requirements of the Fourteenth Amendment. Further, the application of that provision to the plaintiffs in the case at hand was also procedurally deficient as the defendants did not provide any opportunity for a hearing to determine the propriety of denying the renewal of the plaintiffs' automobile license tags.

### C. Relief

In their submissions to the court, the plaintiffs seek very broad relief for the defendants' violation of the Fourteenth Amendment:

> [T]he plaintiffs request the Court to enter an order granting summary judgment in favor of the Plaintiffs and judgment rendered enjoining the Defendants from failing to issue or renew car tags upon payment of license fees only and that the Defendants be further enjoined from charging or assessing late fees or penalties, and that the court declare unconstitutional MS Code Ann. Section 19–5–22 (1994 and 1996 version), that Plaintiffs be adjudged exempt from past, present and future garbage fees pursuant to Miss.Code Ann. Section 19–5–21 et seq. Further the Plaintiffs pray for the Court to assess the Defendants with court costs and all parties bear the expense of their own attorney fees.

Plaintiffs' Motion for Summary Judgment, p.2. Further, this court may award the plaintiffs any relief to which they are entitled. Fed.R.Civ.P. 54(c) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."); *see also North Alamo Water Supply Corp. v. San Juan,* 90 F.3d 910, 918 (5th Cir.1996); *Southern Constructors Group v. Dynalectric Co.,* 2 F.3d 606, 610 (5th Cir.1993); *Dierschke v. O'Cheskey,* 975 F.2d 181, 185 (5th Cir.1992).

However, throughout their submissions to this court, the only issue that the plaintiffs have sought summary judgment upon has been that of procedural due process. In fact, the plaintiffs have explicitly stated:

> The issue here is not garbage, nor the fees it generates, nor the government's legitimate interest in the proper handling of societal by-products. The issue is pristeenly simple—whether the government may take property of an individual without due process of law.

Plaintiffs' Rebuttal Brief, p.1. In that the issue is limited in this case, the plaintiffs' available relief is also limited.

### 1. Nominal Damages

■ Nominal damages are available to the plaintiffs by virtue of the mere fact that their procedural due process rights have been violated. *See, e.g., Farrar v. Hobby,* 506 U.S. 103, 112, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992); *Hughes v. Rowe,* 449 U.S. 5, 13 n. 2, 101 S.Ct. 173, 177 n. 2, 66 L.Ed.2d 163 (1980); *Hill v. Pontotoc,* 993 F.2d 422, 425 (5th Cir. 1993). As such, this court shall award the plaintiffs nominal damages against the defendants in the amount of one dollar ($1.00) each.

## 2. Actual Damages

Damages are not presumed to result from deprivation of procedural due process; plaintiffs must prove actual injury in order to recover anything beyond nominal damages. *See Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978). Where no substantive violation of rights can be shown, it is difficult to envision what actual damages plaintiff might prove. Courts have expressed skepticism as to whether actual damages resulting solely from the deprivation of procedural due process ever can be proved, *see Wilson v. Taylor*, 658 F.2d 1021, 1032 (5th Cir.1981), but have nevertheless afforded plaintiffs the opportunity to prove such damages. *See, e.g., Laje v. R.E. Thomason General Hospital*, 665 F.2d 724, 728 (5th Cir.1982).

*Russell v. Harrison*, 736 F.2d 283, 292 n. 17 (5th Cir.1984). In order to recover actual damages in this case, the plaintiffs would have to show that either 1) if the proper procedures had been followed they would not have been deprived of the renewal of their automobile license tags, or 2) even if they would have been denied renewal of their tags, the lack of procedure harmed them in some way. *See Zinermon*, 494 U.S. at 134 n. 19, 110 S.Ct. at 988 n. 19, 110 S.Ct. at 988 n. 19. The defendants' argument regarding the plaintiffs' lack of injury falls into this inquiry. Defendants' Brief, p.6 ("Furthermore, Plaintiffs do not contend that they do not owe the fee or that the fee is inaccurate."). Nevertheless, as noted, the plaintiffs may be able to prove compensable injury by showing that the lack of procedure harmed them in some way *other than* the resulting denial of car tags. While it presently appears unlikely that any such damages can be shown in this case, the court will allow the plaintiffs an opportunity to demonstrate any such damages.

## 3. Attorney's Fees

As the plaintiffs instituted this action under the auspices of 42 U.S.C. § 1983, they may be entitled to an award of attorney's fees. 42 U.S.C. § 1988 (stating that in § 1983 cases "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."). The court is unclear whether the plaintiffs shall request such an award, however. The plaintiffs indicated otherwise when they requested that "all parties bear the expense of their own attorney fees." Plaintiffs' Motion for Summary Judgment, p.2. In any event, this court shall allow the plaintiffs an opportunity to request an award and shall likewise afford the defendants an opportunity to challenge any such request by the plaintiffs.

## 4. Injunctive Relief

 It is the area of injunctive relief where the plaintiffs seek the broadest recovery. Even though they only effectively challenge a particular provision of a single state statute (§ 19–5–22(4)), they request that this court preclude enforcement of that entire statute (§ 19–5–22) *and* somehow "exempt" these plaintiffs from garbage fees levied by virtue of an entirely separate statute (§ 19–5–21). First, this court can find no justification for enjoining the enforcement of mandatory garbage fees imposed pursuant to Miss. Code Ann. § 19–5–21, because the plaintiffs have not challenged the validity of that statute in this court. Second, this court does not automatically strike as unconstitutional an entire state statute merely because one of its provisions is itself unconstitutional. Such is a reflection of the:

> elementary principle that the same statute may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected ... [A] federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it.

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394, 405 (1985); *see also People ex rel. Alpha Portland Cement Co. v. Knapp*, 230 N.Y. 48, 60–61, 129 N.E. 202, 207 (1920) (Cardozo, J.) ("Our right to destroy is bounded by the limits of necessity."). Declaring statutes only partially invalid is the preferred course, allowing the constitutionally permissible por-

tions of state statutes to remain effective. However,

> [p]artial invalidation would be improper if it were contrary to legislative intent in the sense that the legislature had passed an inseverable Act or would not have passed it had it known the challenged provision was invalid.

*Brockett,* 472 U.S. at 506, 105 S.Ct. at 2803, 86 L.Ed.2d at 407. Severability is, of course, a matter of state law. *Leavitt v. Jane L.,* — U.S. —, —, 116 S.Ct. 2068, 2069, 135 L.Ed.2d 443 (1996).

Even though severability is governed by state law, this court must apply a presumption of severability. *Regan v. Time,* 468 U.S. 641, 653, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984); *Community for Creative Non–Violence v. Turner,* 893 F.2d 1387, 1394 (D.C.Cir.1990). "The standard for determining the severability of an unconstitutional provision is well established: Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *New York v. United States,* 505 U.S. 144, 185, 112 S.Ct. 2408, 2433, 120 L.Ed.2d 120 (1992) (citing *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684, 107 S.Ct. 1476, 1480, 94 L.Ed.2d 661 (1987)); *Steverson v. City of Vicksburg, Miss.,* 900 F.Supp. 1, 13 (S.D.Miss.1994).

When looking at the Mississippi statutory scheme of countywide garbage collection disposal systems set forth in Miss.Code Ann. § 19–5–17, et seq., it is apparent that foreknowledge of the unconstitutional nature of § 19–5–22(4) (1996 Supp.) would not have prevented the Mississippi legislature from enacting the scheme. The purpose of the enactments was to establish a supplementary scheme whereby counties could create and operate a countywide garbage and rubbish collection system. The declaration by this court that *one* of the available fee collection enforcement mechanisms is constitutionally infirm does not render the entire enactment impotent, for other fee collection enforcement mechanisms remain. Miss.Code Ann. § 19–5–22(2) (imposing lien against real property); Miss.Code Ann. § 19–5–17 (authorizing civil action for recovery of delinquent fees). The undersigned seriously doubts that the Mississippi Legislature would have refused to adopt this scheme without the inclusion of the present version of Miss. Code Ann. § 19–5–22(4).

This court need not strike the entire statute or statutory scheme involved in this case, for the mere striking of the offending provision itself will meet the requirements of due process and will allow the constitutional provisions to be employed. Today's ruling by the court does not prevent the defendants from imposing and collecting mandatory garbage fees pursuant to Miss.Code Ann. § 19–5–21. What it does do is prevent these defendants from employing the present version of Miss.Code Ann. § 19–5–22(4) to refuse the issuance or renewal of automobile license tags to those persons who are delinquent in the payment of those mandatory garbage fees. This is the extent of this court's injunctive order [6], and the remainder of the state statutory scheme is unaffected by this court's ruling.

### III. Conclusion

In light of the foregoing, this court finds that Miss.Code Ann. § 19–5–22(4) (1996 Supp.) is unconstitutional on its face and as applied as violative the guarantees of procedural due process. As such, the defendants will be enjoined from implementing that provision of the Mississippi Code, and may not refuse to issue or renew automobile license tags to the plaintiffs until such time as the Mississippi Legislature amends that provision to make it comport with the requirements of procedural due process. Further, the plaintiffs shall be awarded nominal damages in the amount of one dollar ($1.00) each.

---

6. The plaintiffs have requested that they be exempt from "late fees and penalties" involved with the untimely payment of monies required to be paid before they may receive their automobile license tags. To the extent that any such late fees and penalties are the result of the county's failure to issue the tags pursuant to Miss.Code Ann. § 19–5–22(4), the assessment of those fees and penalties would be entirely inequitable. To that extent, then, the plaintiff's request for relief shall be granted.

The court makes no decision as to the propriety of compensatory damages or an award of attorney's fees, and leaves those matters for a later determination by the court.